**Verda HARRIS, Plaintiff,**

v.

**Francis T. GAUL, et al., Defendants.**

**Civ. A. No. C 81–360.**

United States District Court,
N.D. Ohio, E.D.

Oct. 24, 1983.

Jane Bielefeld, Carolyn Carter, Cleveland, Ohio, for plaintiff.

Jeffrey Posner, Thomas A. Cables, Asst. Pros. Attys., Sherman Hollender, Craig S. Miller, Asst. Director of Law, Cleveland, Ohio, for defendants.

## OPINION AND ORDER

ANN ALDRICH, District Judge.

This litigation presents a troubling question: did a statutory scheme, whose commendable purpose is to control urban blight by expediting foreclosure of tax delinquent properties, deprive the plaintiff of a significant property interest—her home—without due process? In 1969, Verda Harris purchased a Cleveland house under a recorded land contract, lived there and made payments for more than a decade, and then discovered in 1981 that the city had sold the house at a tax sale of which she had no actual notice. She challenges the constitutionality of Ohio Rev.Code § 5721.18(B), the provision authorizing such a sale.

Following a trial, this Court took the case under advisement, and deferred its Findings of Facts and Conclusions of Law pending the Supreme Court's ruling in *Mennonite Board of Missions v. Adams,* —— U.S. ——, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). That case compels us to hold that the Cuyahoga County Prosecutor's failure to provide Verda Harris with actual notice of the tax sale of her house violated the Due Process Clause of the Fourteenth Amendment.

## LEGISLATIVE HISTORY

Section 5721.18(B) and the problems it has caused must be viewed in the context of Cleveland's attempts to reverse the steady deterioration of its housing stock and residential property tax base. Prior to 1976, all foreclosure actions against delinquent property—land on which the taxes, assessments, and penalties have remained unpaid at two

consecutive semiannual tax settlement periods—were prosecuted *in personam* under what is now Ohio Rev.Code 5721.18(A).[1]

Under this cumbersome system, which is still used for delinquencies that are less than three years old, the county prosecutor could initiate foreclosure proceedings against delinquent property only after obtaining a costly judicial title report. After he filed a complaint against a parcel and served all necessary parties, a hearing was held. The complaint then could be amended and new parties incorporated. After more research and preparation of a Final Judgment Report, the prosecutor submitted a judgment entry and obtained judgments against each parcel in question. Following judgment, appraisal, and advertising, the sheriff finally sold the property.

Using this procedure, the county prosecutor was unable to keep up with delinquencies. It took several years to complete even the simplest foreclosures, which often cost more money to prosecute than they ultimately generated. With swift foreclosure unlikely, speculators withheld taxes, invested funds elsewhere, and rested secure in their knowledge that even after a successful prosecution, they would only face a one-time, non-cumulative, ten percent penalty for failure to pay a year's taxes. Many properties deteriorated during the foreclosure process as owners refused to rehabilitate or reinvest in them. Another consequence, the defendants contend, was that as Cleveland's tax base shrank, the tax rate rose for owners of non-delinquent property.

By 1976 there were 10,000 parcels certified as delinquent in Cuyahoga County; by 1980 there were 24–26,000. Sixty percent of these were in Cleveland. In 1976, the Cleveland City Planning Commission published a study of the foreclosure system. Olson & Lachman, *Tax Delinquency in the Inner City: The Problem and Its Possible Solutions* (1976). The study concluded:

Existing tax foreclosure procedures have proved inadequate to deal with the

---

1. The statute provides:

The prosecuting attorney shall, upon the delivery to him by the county auditor of a delinquent land tax certificate, institute a proceeding in the name of the county treasurer to foreclose the lien of the state, in any court of competent jurisdiction within a reasonable period of time thereafter unless the taxes, assessments, penalties, interest, costs incurred in any proceeding commenced under this section, and charges are paid prior to the time a complaint is filed. He shall prosecute the same to final judgment and satisfaction. If there is a copy of a written undertaking attached to a certificate or if a copy of a certificate is received from the county auditor prior to the commencement of any proceedings under this section, the prosecuting attorney shall not institute the proceeding to foreclose unless he receives the certification of the county treasurer that the undertaking has become void.

(A) This division applies to all certificates delivered to the prosecuting attorney for which foreclosure proceedings are commenced by the filing of a complaint before the end of the second year from the date on which the delinquency was first certified by the county auditor and all foreclosure proceedings not instituted and prosecuted under division (B) of this section. The proceedings for such foreclosure shall be instituted and prosecuted in the same manner provided by law for the foreclosure of mortgages on land, except that if service by publication is necessary, such publication shall be made once a week for three consecutive weeks instead of as provided by the Rules of Civil Procedure, and the service shall be complete at the expiration of three weeks after the date of the first publication. It is sufficient, having been made a proper party to the suit, for the treasurer to allege in his complaint that the certificate has been duly filed by the auditor: that the amount of money appearing to be due and unpaid is due and unpaid and a lien against the property therein described, without setting forth in his complaint any other special matter relating thereto. The prayer of the complaint shall be, that the court make an order that said property be sold by the sheriff, or if the action is in the municipal court, by the bailiff, in the manner provided in section 5721.19 of the Revised Code. In such proceedings, the treasurer may join in one action any number of lots or lands, but the decree shall be rendered separately, and any proceedings may be severed, in the discretion of the court, for the purpose of trial or appeal, and the court shall make such order for the payment of costs as is deemed proper. The delinquent land tax certificate filed by the auditor with the prosecuting attorney is prima facie evidence at the trial of such action, of the amount and validity of the taxes, assessments, penalties, interest, and charges appearing due and unpaid, and of the non-payment thereof.

scope of Cleveland's delinquency problem. The current foreclosure process is both time consuming and costly, and the vast increase in the number of delinquent parcels has rendered it virtually inoperative. The current law allows foreclosure after a property has been delinquent for approximately two years, but it has taken an average of ten years for properties to be offered at tax sales. Only a small portion of the eligible parcels are actually offered at the tax sales, largely because of the cost of the foreclosure procedure. . . .

Given Cleveland's experience with the existing foreclosure procedure, it is apparent that the assumptions underlying that procedure no longer represent the real estate market realities in many areas of the city. The foreclosure procedure results neither in recovery of delinquent tax revenues nor in productive return of delinquent properties to the tax duplicate. Changes in the process are necessary to reflect economic and financial realities and to insure that the public receives compensation for lost tax revenues.

*Id.* at 129, 51.

The study recommended adopting a summary foreclosure procedure that would dispense with title searches. The Ohio Legislature responded by passing § 5721.18(B), which went into effect on September 27, 1976. The new provision established an action *in rem* for foreclosure proceedings that are commenced by the filing of a complaint after the end of the third year from the date on which the land was first certified as delinquent.

In pertinent part, § 5721.18(B) states:

(B) Proceedings for foreclosure that are commenced by the filing of a complaint after the end of the third year from the date on which the delinquency was first certified by the county auditor constitute an action in rem. . . . A complaint shall contain the permanent parcel number of each parcel included therein, the full street address of the parcel, when available, a description of the parcel, as set forth in the delinquent land tax certificate, the name and address of the last known owner of the parcel if the same

appears on the general tax list, and the amount of taxes, assessments, penalties and charges due and unpaid with respect to the parcel. . . .

(1) Within thirty days after the filing of a complaint, the clerk of court where such complaint was filed shall cause a notice of foreclosure, . . . to be published once a week for three consecutive weeks in a newspaper of general circulation in the county. . . . Within thirty days after the filing of a complaint, the clerk shall also cause a copy of a notice, . . . to be mailed by ordinary mail with postage prepaid to each person named in the complaint as being the last known owner of a parcel included therein. . . . In the event the name and address of the last known owner of a parcel included in a complaint is not set forth therein, the county auditor shall file an affidavit with the clerk of court stating that the name and address of the last known owner of such parcel does not appear on the general tax list.

Notice of the foreclosure is published once a week for three consecutive weeks in a newspaper of general circulation. Concurrent notice is sent by ordinary mail to the last known owner of the property. If the last known owner's name and address do not appear on the general tax list, the county auditor must file an affidavit with the clerk of court attesting to that fact. But, significantly, even in that event, no notice other than publication need be given. Consequently, property upon which delinquent taxes are owing may be sold with only notice by publication—and no actual notice—to those who possess or may possess an interest in the property involved. The county prosecutor no longer is required to conduct a title search to find and join all possible interested individuals as party defendants.

In the only challenge to § 5721.18(B) to reach the Ohio Supreme Court, that Court upheld the facial validity of the notice by publication provision of the statute, but held that an owner, whose actual residence address was known to be different from the

address of the property being foreclosed upon, deserved actual notice at his residence address before his property was sold. *In re Foreclosure of Liens for Delinquent Taxes,* 62 Ohio St.2d 333, 405 N.E.2d 1030 (1980).

## FINDINGS OF FACT

The parties have stipulated to the relevant facts, which are not in dispute. Verda Harris and her husband, Theodore Harris (from whom she was separated in 1971), entered into a land contract on June 23, 1969, for the purchase of real property at 4133 East 127th Street in Cleveland. The vendors were Sam and Tilda Diotalevi, now both deceased. On June 27, 1969, the contract was recorded at the county recorder's office. It called for consideration of $17,-000 in monthly payments of $150.00. From 1969 to 1980, Verda Harris paid approximately $16,500 in principal, interest, and other charges. She has made no payments since April 12, 1980.

The contract required the sellers to pay taxes and assessments on the property; the amounts would then be added to the balance due on the agreement.[2] However, no real estate taxes were paid after 1970. The county auditor certified that the taxes were delinquent and published a delinquency notice in the Sun newspapers on July 8, 1971. No other notice of tax delinquency was given.

On September 28, 1977, the county prosecutor, on behalf of county treasurer Francis T. Gaul, instituted an *in rem* action under § 5721.18(B) to foreclose tax liens on the property. The prosecutor attached the street address and description of the premises to the foreclosure complaint, and filed it in Common Pleas Court. Notice of this action appeared in the Cleveland Plain Dealer on October 6, 13, and 20, 1977. No notice was ever sent to the premises, because neither the general tax list nor the tax mailing list contained an address for the Diotalevis or Verda Harris.

The court entered a foreclosure judgment against the property on July 28, 1979 and ordered the sheriff to sell it. The Plain Dealer and the Daily Legal News published notice of the sale on December 15, 22, and 29, 1979. The sale was held on January 28, 1980. Donald Gibson was the successful bidder and the court confirmed the sale on February 12, 1980. Gibson thereafter went to the premises and informed Verda Harris that he now owned her property, notwithstanding her claim that she was purchasing it on a recorded land contract. Gibson paid the county a total of $4,594.32 for the property and was issued a deed, dated February 19, 1980, on April 23, 1980.

Two intertwined actions then proceeded in the state courts. Harris filed a Motion for Relief from Judgment and for Joinder in the Common Pleas Court foreclosure action. A hearing was set for September 9, 1980. Gibson, meanwhile, initiated an evic-

2. Harris testified that she had no knowledge of any delinquency since she believed that the Diotalevis were paying the taxes. Confusion concerning the duty to pay is understandable. On page 166 of the land contract, Book of Mortgages, Vol. 12696, a typewritten section states:

... Taxes and assessments shall be prorated as of the date of land contract and the Seller shall make all future payments of taxes as they come due and add said amount to the balance due on this agreement....

An inconsistent printed section on page 167 states:

The party of the second part [Verda and Theodore Harris] further agrees ... to pay all taxes and assessments of every description whatsoever that may be levied or assessed upon said land or any part thereof, from and after the date of these presents.

Defendants argue that Verda Harris was obliged to pay the real estate taxes, knew it was her duty to do so, knew the taxes had become delinquent, and knew the property was subject to foreclosure. She testified that she was not obligated to pay the taxes.

Q: Did you know that land taxes are assessed against the property?
A: Yes, but in the deed Mr. Diotalevi was supposed to pay the taxes.

Testimony of Verda Harris at Preliminary Injunction Hearing, March 13, 1981 at 7.

In Ohio, the typed portion of a land contract controls over the printed portion if the two provisions conflict. *O'Neill v. German,* 154 Ohio St. 565, 97 N.E.2d 8 (1951); *Loblaw, Inc. v. Warren Plaza, Inc.,* 163 Ohio St. 581, 127 N.E.2d 754 (1955). Notwithstanding the defendants' argument, Verda Harris was not responsible for paying the property taxes.

tion action in Municipal Court on September 5, 1980.

The eviction trial was thrice postponed, once when Harris demanded a jury trial, again when she became ill, and once more when she was granted a stay. The stay was vacated and trial was set for January 12, 1981. In Harris' suit, the Common Pleas Court, having denied all her Motions for Relief on the merits, vacated its own stay of the eviction suit, after which the Court of Appeals granted and vacated another stay. This exhausted Harris' opportunities for a stay from the Ohio courts, leaving the eviction trial scheduled for March 16, 1981.

Harris initiated an action in this Court on March 4, 1981 seeking a temporary restraining order to enjoin the eviction. On March 13, 1981 a preliminary injunction was issued, halting the eviction action pending a hearing on the merits. Pursuant to a stipulation, Harris withdrew her state court appeal. A trial was held on April 9 and 10, 1981 and this Court took the matter under advisement.

## CONCLUSIONS OF LAW

*Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) is the Supreme Court's guiding light for all questions relating to notice and due process. "An elementary and fundamental requirement of due process in any proceeding which is to be according finality is notice reasonably calculated, under all the circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. The Court held that published notice of judicial settlement constituted insufficient notice to those beneficiaries of a common trust fund who could easily be reached by mail. Notice by publication was inadequate "not because in fact it fails to reach everyone, but because ... it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at 319, 70 S.Ct. at 660.

Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint.

*Id.* at 315, 70 S.Ct. at 658. *See also Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982) (posting summons on door of tenant's apartment inadequate means of providing notice of forcible entry and detainer action); *Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (posting notice near but not on landowner's property invalid); *Walker v. City of Hutchinson,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956) (notice by publication insufficient in condemnation action).

Defendants contend that Harris does not possess a property interest of sufficient substantiality to invoke *Mullane* due process protection. The Supreme Court explicitly rejected such an argument in *Mennonite Board of Missions.* There a mortgagor reneged on her obligation to pay taxes on a parcel of property, leading to a tax sale of the property. Acting under Indiana law, the county posted and published notice of the sale and mailed notice to the mortgagor by certified mail, but the mortgagee ("MBM") received no notice, either from the county or from the mortgagor. The property was sold at auction and MBM did not learn of the sale until after a two-year redemption period had lapsed. When the buyer sued in state court to quiet title to the property, MBM unsuccessfully challenged the constitutionality of the notice provision of the tax sale statute.

The Supreme Court, reversing the Indiana courts, held first that mortgagees possess protectable property interests.

... To begin with, a mortgagee possesses a substantial property interest that is significantly affected by a tax sale. Under Indiana law, a mortgagee acquires a lien on the owner's property which may be conveyed together with the mortgagor's personal obligation to repay the debt secured by the mortgage.... A mortgagee's security interest generally has priority over subsequent claims or liens attaching to the property, and a purchase money mortgage takes precedence over virtually all other claims or liens including those which antedate the execution of the mortgage.... The tax sale immediately and drastically diminishes the value of this security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors. Ultimately, the tax sale may result in the complete nullification of the mortgagee's interest, since the purchaser acquires title free of all liens and other encumbrances at the conclusion of the redemption period.

103 S.Ct. at 2711 (citations omitted).

 A vendee under a land contract has an equally substantial property interest under Ohio law. Such a vendee—"the person who acquires an interest in property pursuant to a land installment contract, ..." Ohio Rev.Code § 5313.01(D)—holds the equitable title to the property and is entitled to possession, while the vendor merely holds legal title. *Kuhn v. Griffin,* 3 Ohio App.2d 195, 209 N.E.2d 824 (Ct.App. Lucas Cty.1964). A vendee who takes possession of real estate under a land contract is the equitable owner of real estate so long as the contract remains in effect. *Huddleston v. Ward,* 33 Ohio Op. 489, 68 N.E.2d 580 (Mun.Ct.Dayton 1946). Notwithstanding the differences between legal and equitable property rights, explicit land contracts "may create property protected by constitutional guarantees...." *Superior Savings Association v. City of Cleveland,* 501 F.Supp. 1244, 1248 (N.D.Ohio 1980); *cf. Webster v. Redmond,* 599 F.2d 793 (7th Cir.1979).

 By virtue of her recorded land contract, Verda Harris possessed a significant interest in the property at 4133 East 127th Street and is protected by the due process clause. *See Dow v. Michigan,* 396 Mich. 192, 240 N.W.2d 450 (1976); *see generally Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). She clearly merited at least the protection accorded to the mortgagee in *Mennonite Board of Missions.* While a tax sale damages a mortgagee's future security interest in a property, it damages an occupant vendee's present possessory interest and can lead to actual loss of shelter. In sum, Harris was entitled to notice reasonably calculated to inform her of the impending tax sale.

*Mennonite Board of Missions* sets forth just how much notice was due:

Since a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale.... When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane.*

Neither notice by publication and posting, nor mailed notice to the property owner, are means "such as one desirous of actually informing the [mortgagee] might reasonably adopt to accomplish it." ... Because they are designed primarily to attract prospective purchasers to the tax sale, publication and posting are unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices. Notice to the property owner, who is not in privity with his creditor and who has failed to take steps necessary to

preserve his own property interest, also cannot be expected to lead to actual notice to the mortgagee. . . .

103 S.Ct. at 2711 (citations omitted).

■ The holder of a property interest that is both "legally protected" and "publicly recorded" must be given actual notice of a pending sale. Under this standard, the notice provisions of § 5721.18(B) did not provide due process to Verda Harris. But where the interest is less substantial or "is not reasonably identifiable," *Id.,* constructive notice like that provided here would be constitutionally adequate. *Id.* 103 S.Ct. at 2711 n. 4.

■ This Court thus finds that although § 5721.18(B) is not facially invalid, it is unconstitutional as applied to Verda Harris, whose property interest is both legally protected and publicly recorded. Judgment must be entered for the plaintiff.

In light of possible changes in the status of the parties since the time of the trial and post-trial pleadings, the Court will postpone the ordering of specific remedies until it receives recommendations from counsel. Definitive pleadings of no more than fifteen pages shall be submitted to the Court by November 17, 1983. In addition, counsel for the plaintiff are instructed to submit their request for attorney's fees, in conformity with *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980).

IT IS SO ORDERED.