HELENE E. McCANN et al., Appellants, v JOHN V. SCADUTO, as Treasurer of the County of Nassau, et al., Respondents.

Second Department, December 31, 1986

**APPEARANCES OF COUNSEL**

*Suozzi, English & Klein, P. C. (Jeffrey G. Stark, Robert N.*

*Zausmer, Kenneth L. Gartner* and *Michael A. Ciaffa* of counsel), for Helene E. McCann, appellant.

*Edward T. O'Brien, County Attorney (Joshua A. Elkin* of counsel), for John V. Scaduto, respondent.

*Wimpfheimer & Sherman (Steven Wimpfheimer* of counsel), for Shirley Stone, respondent.

*Robert Abrams, Attorney-General (Peter Bienstock, Mary Hilgeman* and *Lisa H. Blitman* of counsel), *amicus curiae.*

## OPINION OF THE COURT

Per Curiam.

The primary issue presented by this appeal, upon reargument, is whether the provisions of the Nassau County Administrative Code (hereinafter NCAC) dealing with the enforcement of collection of real estate taxes are unconstitutional on the basis that the NCAC does not require that actual notice of sale of the tax lien upon the owner's property be served upon the property owner. The NCAC does, however, require that the property owner be served with actual notice, by certified mail, return receipt requested, of his right to redeem the outstanding tax lien prior to the expiration of the redemption period, after which time the lienholder is entitled to acquire absolute title to the subject premises. We conclude that the statutory scheme is constitutional and, accordingly, upon reargument, adhere to this court's prior holding which affirmed the dismissal of the petition *(see, McCann v Scaduto,* 118 AD2d 690).

I

Prior to a discussion of the facts of the case at bar, a review of the particular provisions of the NCAC applicable herein is warranted.[1] NCAC § 5-37.0 (a) requires the County Treasurer each year to compile a list of properties for which taxes have not been paid in the previous year. These outstanding taxes are designated as a "tax lien" against each of the respective properties (NCAC § 5-24.0 [4]) and the County Treasurer is then required to set a date in February of the following year

---

1. We take judicial notice of the fact that while this appeal was pending, the Nassau County Administrative Code has been amended insofar as it deals with the enforcement of the collection of real estate taxes *(see,* Local Laws, 1986, No. 13 of County of Nassau). We do not pass judgment on the constitutionality of these new provisions.

for the sale of said liens (NCAC §§ 5-37.0, 5-39.0 [a]). The list, along with notice that the tax liens will be sold unless the outstanding charges are paid by that date, is required to be published three times in a newspaper of general circulation (NCAC § 5-37.0 [a], [c]). The tax liens for which payment has not been made by the date specified in the published notice are then sold at a public auction to the bidders who offer to accept the lowest rate of interest on the outstanding balance of the tax lien (NCAC § 5-39.0 [a], [former b]; § 5-40.0). The code provisions in question did not provide for actual notice of the sale of the tax lien upon the property owner.

A two-year redemption period begins to run once the tax lien is sold, during which time the property owner may satisfy the tax lien by making payment to the County Treasurer of the outstanding taxes, interest, penalty, and expenses regarding the lien (NCAC §§ 5-48.0, 5-50.0). Commencing no later than 21 months after the tax lien sale, the purchaser of a tax lien is required to serve a three-month notice to redeem by certified mail, return receipt requested, upon the record owner or owners, mortgagee or mortgagees, prior lienholder or lienholders, and other specified parties (NCAC § 5-51.0).

Under the provision in question, the notice essentially informed the recipient that title to the property would be conveyed to the lienholder unless the lien is redeemed by the end of the redemption period (NCAC § 5-51.0 [former b] [4]). If the property owner failed to redeem the tax lien within the specified three-month time period, the lienholder could either commence a formal real property foreclosure proceeding to obtain title or, in the alternative, apply to the County Treasurer to obtain a deed of conveyance to the property (NCAC § 5-51.0 [former b]). If the lienholder chose the latter alternative, the County Treasurer, upon receipt of the three-month notice to redeem together with proof of service, issued a deed of conveyance to the lienholder (NCAC § 5-51.0 [e]; § 5-53.0). The deed of conveyance vested absolute title in fee to the lienholder and constituted presumptive evidence that all of the proceedings leading up to the conveyance (i.e., the sale of the tax lien and service of the notice to redeem) were validly performed (NCAC §§ 5-53.0, 5-54.0 [b]).

## II

The facts of this proceeding are essentially undisputed. The petitioner Helene McCann (Mrs. McCann) was the owner of

real property located at 22 Clayton Avenue, Floral Park, in the County of Nassau during the period from June 1953 to June 1984. During the latter term of her period of ownership of the premises, Mrs. McCann had developed a history of failing to timely pay the taxes assessed against her property. For example, in 1973 Mrs. McCann failed to make payment of her real estate taxes and, as a result, in February 1975 a tax lien on her premises was sold to one Sadie Schwartz. That tax lien was ultimately redeemed by Mrs. McCann in June 1975. Similarly, in June 1976 and again in February 1979, tax liens upon Mrs. McCann's property were sold to the respondent Shirley Stone. Both of these liens were also eventually redeemed by Mrs. McCann.

Finally, in 1981, Mrs. McCann again defaulted in the payment of school taxes assessed against her property for the fiscal year 1980-1981. Pursuant to the statutory scheme set forth in NCAC § 5-37.0, respondent Scaduto caused to be published a notice of a tax lien sale on Mrs. McCann's property in *Newsday* for the requisite three-week period.[2] Thereafter, on February 16, 1982, the tax lien on Mrs. McCann's property was sold to the respondent Stone and a certificate of sale of the tax lien was issued.

As required by NCAC § 5-51.0, on December 17, 1983, the respondent Stone sent a notice to redeem to Mrs. McCann, via certified mail, return receipt requested, informing her of the tax lien upon her property and stating that if Mrs. McCann did not redeem the tax lien on or before March 20, 1984, the respondent Stone would take a deed of conveyance to the

---

2. In opposition to the petition in this case, the respondents offered evidence indicating that notice of the tax lien sale was also mailed to Mrs. McCann. Mrs. McCann denied having received that notice. Since the NCAC is *not* silent as to the notice of a tax lien sale to be given to a property owner (NCAC § 5-37.0), Real Property Tax Law § 1002 (4) which requires mailed notice to the property owner of the sale, does not apply *(see,* Real Property Tax Law § 2006; *Matter of Stevens Med. Arts Bldg. v City of Mount Vernon,* 72 AD2d 177). As a result, the respondents may not rely upon the presumption that public officials perform their statutory duty, to establish that notice of the tax lien sale was sent to Mrs. McCann *(see, Matter of Driscoll v Troy Hous. Auth.,* 6 NY2d 513). To the extent that our recent decision in *Matter of Socci v Stone* (120 AD2d 531) holds to the contrary, it is overruled.

In the absence of a presumption of regularity, the record contains insufficient evidence to establish that Mrs. McCann received notice, other than by publication, of the tax lien sale. In the absence of such evidence, we reach the merits of the constitutionality of the NCAC regarding its notice provisions.

subject premises. Mrs. McCann concedes that she received the notice to redeem on December 17, 1983. Despite her receipt of said notice, Mrs. McCann did not redeem the outstanding tax lien within the three-month period provided for in the notice. As a result, on June 20, 1984, the respondent Stone requested from the respondent Scaduto a deed of conveyance to Mrs. McCann's property. A deed was issued on June 26, 1984.

Mrs. McCann claims that she first became aware that she no longer owned the subject premises when she sent a check to the respondent Scaduto for payment of the 1983-1984 school taxes assessed against her property. The check was returned to Mrs. McCann with a letter from the respondent Scaduto informing her that the respondent Stone held title to the premises by reason of Mrs. McCann's failure to redeem the tax lien.

Mrs. McCann, together with her daughter, Teresa Rose McCann, and the petitioner William Lewis, an occupant of a portion of Mrs. McCann's property, instituted a proceeding pursuant to CPLR article 78 in January 1985 seeking, *inter alia,* (1) to vacate the deed of conveyance issued to the respondent Stone for the subject premises; and (2) to permit Mrs. McCann to redeem the lien upon the premises which had been purchased by the respondent Stone. Special Term found that the deed of conveyance held by the respondent Stone to the subject premises was valid and accordingly dismissed the petition. The petitioners appealed Special Term's judgment and this court affirmed *(see, McCann v Scaduto,* 118 AD2d 690, *supra).* The petitioner Helene E. McCann, represented by new counsel, moves, *inter alia,* for reargument of the appeal, and upon reargument, seeks to challenge the constitutionality of the applicable provision of the NCAC insofar as they deal with the enforcement and collection of real estate taxes.

## III

Mrs. McCann takes the position that the provisions in question are unconstitutional on the basis that they fail to provide that a property owner receive actual notice of the sale of a tax lien levied on his property. We disagree. As the Court of Appeals recently stated, "there is no constitutional requirement that the owner receive personal notice of [a] tax sale * * * *(Botens v Aronauer,* 32 NY2d 243, app dsmd 414 US 1059; see, also, *Ballard v Hunter,* 204 US 241, 254-255; *Lily Dale Assembly v County of Chautauqua* [72 AD2d 950, *affd* 52

NY2d 943, *cert denied* 454 US 823]). Notification by publication is adequate" *(Congregation Yetev Lev D'Satmar v County of Sullivan,* 59 NY2d 418, 422).

The petitioner Helene E. McCann, however, relies heavily upon the recent United States Supreme Court case of *Mennonite Bd. of Missions v Adams* (462 US 791). In *Mennonite,* the court held that the Indiana tax statute which did not provide for actual notice to a mortgagee of a tax sale of a mortgaged premises, violated the due process rights of the mortgagee. Under the Indiana statute, as it then existed, only the record owner of the subject premises was provided with actual notice of the tax sale. The mortgagee was merely accorded notice by publication. The *Mennonite* court recognized, at the outset, that a mortgagee had a legally protected property interest that is significantly affected by a tax sale. The court then reaffirmed the principles set forth in *Mullane v Central Hanover Trust Co.* (339 US 306) in holding that where a property interest is at stake, a party must be afforded that degree of notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action. The *Mennonite* court concluded that as to the mortgagee, neither publication, posting nor mailed notice to the owner was sufficient since the mortgagee's identity in that case was reasonably ascertainable by a review of the property records. Thus, since the mortgagee in *Mennonite* had received no actual notice whatsoever of the tax sale until after the period to redeem had passed, the court ruled that the mortgagee's due process rights under the 14th Amendment were violated.

Applying the aforesaid principles to the case at bar, and keeping in mind the presumption of constitutionality which applies to legislative enactments *(see, Matter of Brown-Forman Distillers Corp. v State Liq. Auth.,* 64 NY2d 479, 485; *Montgomery v Daniels,* 38 NY2d 41, 54-56), we find no constitutional infirmity with the particular provisions of the NCAC challenged herein. Several key distinctions exist between the Nassau County tax scheme in question and the Indiana statute found to be unconstitutional in *Mennonite Bd. of Missions v Adams* (462 US 791, *supra).* Under the Indiana statute, the mortgagee's property interest was immediately affected at the time the tax sale occurred since title to the mortgaged premises passed to the purchaser at the sale, subject to defeasement only if the former owner redeemed the property by paying his taxes. Thus, the mortgagee's property interest was jeopardized at the time the tax sale took place. Under the

Nassau County tax scheme, however, the tax lien sale does not adversely affect the property owner's interest in his property. The only practical effect of the tax lien sale is to change the entity to which the unpaid taxes are owed. The tax lien purchaser does not obtain title to the premises on the date of the sale but merely acquires a tax lien and does not become entitled to exercise any possessory interest in the premises until the end of the statutory two-year redemption period.

Additionally, under the NCAC provisions in issue, before the owner's property interest was divested, he was provided with a three-month notice via certified mail, return receipt requested, of the obligation to redeem within three months. Thus, unlike the Indiana statute which created a danger that a mortgagee would be forever divested of his property interest without ever learning of an impending foreclosure on his security interest *(see, Matter of Foreclosure of Tax Liens by County of Erie [Manufacturers & Traders Trust Co.],* 103 AD2d 636), the NCAC provided the property owner with notice and a three-month period to redeem the tax lien prior to the divestiture of any property interest. Significantly, the statute provided that the failure of the tax lien purchaser to comply with the statutory notice requirements of NCAC § 5-51.0, would prevent the issuance of a deed of conveyance to the lienholder (NCAC § 5-51.0 [e]; § 5-53.0). Clearly then, the provisions of the NCAC challenged herein, comply with the dictates set forth in *Mennonite Bd. of Missions v Adams (supra; see also, Sheehan v County of Suffolk,* 67 NY2d 52, 59, *cert denied sub nom. MacKechnie v County of Sullivan,* — US —, 106 S Ct 3299).

We also reject the claim that due process requires that a property owner be afforded a hearing before the divestiture of his property title to enforce the collection of real estate taxes. The courts have consistently held that due process is not offended by summary statutory remedies for the collection of property taxes provided that the property owner is given the appropriate notices of said proceedings *(see, Sheehan v County of Suffolk, supra; Congregation Yetev Lev D'Satmar v County of Sullivan,* 59 NY2d 418, *supra; Botens v Aronauer,* 32 NY2d 243).

In conclusion, we emphasize that Mrs. McCann concedes having received the three-month notice to redeem the outstanding tax lien held by respondent Stone; however, she took no action to timely redeem said lien. As noted previously, Mrs. McCann had come close to losing title to the subject premises

on at least three prior occasions but in those instances acted in a timely fashion to satisfy the tax liens prior to the expiration of the redemption period. No such action was taken with respect to the lien involved herein. Thus, while Mrs. McCann's plight is a sympathetic one, it is well settled that a property owner is chargeable with knowledge that taxes will be levied against the property regularly and that a default may result in forfeiture of the land (see, *Sheehan v County of Suffolk, supra,* at p 58). Moreover, Mrs. McCann was accorded her due process rights prior to divestiture of title. Accordingly, the petition seeking, *inter alia,* vacatur of the deed of conveyance held by the respondent Stone to the subject premises was properly dismissed.

We have reviewed Mrs. McCann's remaining contentions and find them to be without merit.

Accordingly, reargument should be granted and, upon reargument, the original result should be adhered to.

LAZER, J. P. (concurring in part and dissenting in part). The issue is the validity of Nassau County's former statutory scheme for the enforcement of its right to collect real estate taxes. Under that scheme, contained in the Nassau County Administrative Code, unpaid real estate taxes became liens against the property and were subsequently sold to purchasers who, after two years, could convert unsatisfied liens into title to the property. Having lost title to her property by virtue of her failure to satisfy a tax lien, the former owner seeks to recover her property by challenging the constitutionality of the code. My colleagues of the majority have concluded that the Nassau procedure is constitutional. My contrary conclusion, however, is that the lack of a provision for personal notice of the sale of tax liens, the fact that the code permitted forfeiture of all the value of the liened property in excess of the amount of the tax lien without adequate notice of the opportunity to redeem, and the lack of any provision for a hearing or notice of a hearing, all render the former provisions unconstitutional. As a consequence, the procedure that led to the loss of the property at issue was a nullity.

## I

The petitioner, Helene E. McCann, a 71-year-old widow, owned a house located at 22 Clayton Avenue, Floral Park, New York, which she and her husband purchased 33 years ago. It was there she raised her family and has resided until

the instant events. Upon her husband's death in 1969, Mrs. McCann became the sole owner of the property, which represented essentially all her assets. Her current predicament derives from her failure to pay the 1980-1981 real estate taxes and additional charges relevant to those taxes, all of which became a lien on the property in the amount of $864.50. Although Mrs. McCann admits that in 1983 she received a notice concerning a tax lien, she claims to have been unaware that her property had been forfeited until she attempted to pay some of her tax arrears in September 1984. She then learned that she had lost all interest and claim to the property which had an estimated value of $175,000. The current appeal is from the judgment that dismissed her proceeding pursuant to CPLR article 78 attacking the validity of the deed.

The statutory provisions applicable to this case are contained in the Nassau County Administrative Code (NCAC) as it existed prior to recent amendments (Local Laws, 1986, No. 13 of County of Nassau), prompted in part by the outcry caused by the extreme results of this and other cases. The new amendments substantially change or eliminate provisions applicable to this case. Code references in this opinion refer to provisions in effect prior to the amendments.

The code required the County Treasurer each year to compile a list of properties for which taxes had not been paid in the previous year (NCAC § 5-37.0 [a]). The right of the county to enforce the collection of these taxes and derivative interest and charges against the properties themselves was designated a "tax lien" (NCAC § 5-24.0 [4]) and the code required that a date be set in February of the following year for sale of the tax liens to private individuals (NCAC §§ 5-37.0, 5-39.0 [a]). The code provided that this list, together with notice that the tax liens would be sold unless the outstanding charges were paid by that date, be published three times in a newspaper of general circulation (NCAC § 5-37.0 [a], [c]). The tax liens on properties for which payment had not been made by the specified date were sold at a public auction to the bidders who offered to accept the lowest rate of interest on the unpaid tax lien (NCAC § 5-39.0 [a], [former b]; § 5-40.0). There was no provision in the code for personal service of notice of the tax sale.

Under the code, the owner of affected premises or anyone else having an interest in the property had two years from the sale of the tax lien to satisfy the lien and redeem the property

by paying the County Treasurer the outstanding taxes, interest, penalty and costs and expenses pertaining to the lien (NCAC §§ 5-48.0, 5-50.0). Commencing not later than three months prior to expiration of the two-year redemption period, the bidder who purchased the lien could serve a notice to redeem upon the owner and other persons having an interest in the property by certified mail, return receipt requested (NCAC § 5-51.0). The purpose of the notice was to inform the recipient of the notice that title to the property would be conveyed to the lienholder unless it was redeemed by the end of the redemption period. The code set forth the information that the notice was required to contain and the language of the notice commonly used tracked the statutory language (NCAC § 5-51.0 [former b]).

If the requirements of the code were met, and the owner or other interested parties failed to redeem the property from the lien against it, the lienholder had the choice of bringing formal real property foreclosure proceedings to obtain title or alternatively simply applying to the County Treasurer to obtain a deed to the property (NCAC § 5-51.0 [former b]). Not surprisingly, nearly all lienholders opted for the much simpler procedure to "elect to accept a deed of conveyance of such property" (NCAC § 5-51.0 [former b]; § 5-53.0). The conveyance of the Treasurer's deed gave the lienholder an absolute title in fee and created a presumption that all proceedings leading to the conveyance (including assessment, the tax lien sale and notice to redeem) were validly performed (NCAC §§ 5-53.0, 5-54.0 [former b]).

## II

In this case, the Treasurer's deed to the lienholder represented the culmination of a number of relevant events. In February 1982 the respondent John V. Scaduto, Treasurer of Nassau County, sold to respondent Shirley Stone a tax lien totaling $864.50 on the McCann property representing unpaid taxes and charges for the 1980-1981 tax year. Notice of the forthcoming tax lien sale had previously been published in *Newsday* and the respondents claim that notice of this sale was also mailed to Mrs. McCann. In December 1983, some 21 months after sale of the tax lien, Mrs. Stone served a notice to redeem on Mrs. McCann by certified mail. Upon submission by Mrs. Stone of the necessary affidavit that she had complied with all the code requirements including service of the notice

to redeem, the County Treasurer issued a deed to the property to her in June 1984. The only notice Mrs. McCann admits receiving during the entire process was the December 1984 notice to redeem.

Mrs. McCann asserts that she did not realize from reading this notice that she would lose her interest in her property if all her tax arrears were not paid by the date provided in the notice. While she was not herself possessed of the necessary funds to pay the outstanding arrears (which included subsequent tax assessments for the years 1982-1983), her adult children were gainfully employed and could have helped her. Mrs. McCann insists, however, that because she did not understand the gravity of the impending consequences she sought no help and took no action before expiration of the redemption period.

By September 1984, she had gathered funds to pay some of the tax bills and tendered payment of these bills to the County Treasurer's office. When the County Treasurer returned her payment on October 19, 1984, Mrs. McCann learned for the first time that she no longer owned the property. Although she made application to the County Treasurer to cancel the deed on the grounds that the requisite procedures for its issuance were not strictly followed (see, Real Property Tax Law § 1026 [2]), the Treasurer refused her request, and this article 78 proceeding ensued.

## III

The notice of a tax lien sale informs the owner, other interested parties and bidders that a lien exists on the property by virtue of unpaid taxes, and it announces the fact that a public sale of the lien will take place if the taxes are not paid by a certain date. That sale commences the enforcement proceedings which in Nassau County may terminate in a forfeiture of the property two years later. Mrs. McCann claims that publication was the only notice given to anyone of the forthcoming tax lien sale and that such notice is constitutionally inadequate because the sale affects a substantial interest in property and the Constitution requires that the affected property owners be given personal notice such as by mail. I agree with the majority that Mrs. McCann received no personal notice of the tax lien sale.

Prior to the midtwentieth century, it was traditionally accepted that notice by publication was constitutionally ade-

quate under certain circumstances. In particular, notice of events that concerned real property interests were often deemed to be validly given by publication *(see, e.g., North Laramie Land Co. v Hoffman,* 268 US 276; *Leigh v Green,* 193 US 79, 90-91; *Bell's Gap R. R. Co. v Pennsylvania,* 134 US 232; *Botens v Aronauer,* 32 NY2d 243; *City of Newark v Yeskel,* 5 NJ 313, 74 A2d 883). This was the so-called "caretaker theory" *(Longyear v Toolan,* 209 US 414) partially based on the concept that land ownership was limited to a smaller sector of the populace and changes in ownership occurred more slowly *(see, Botens v Aronauer, supra,* at p 249). Landowners were considered under a special obligation to keep themselves informed about events concerning their land, and regular monitoring of newspapers in their locales was an incident of this obligation *(Botens v Aronauer, supra,* at p 248). A notice in a newspaper was sufficient to inform such interested parties who were "so minded" to be concerned, to satisfy due process *(Leigh v Green, supra,* at pp 92-93). In addition, proceedings that affected land were considered to be a special category of "in rem" proceedings against the land itself *(Leigh v Green, supra,* at p 90). The persons whose interests were affected were considered secondary objects of the proceeding. In this regard, service by publication was justified as being sufficient process for a government to use "to enforce the payment of taxes which have been regularly assessed and levied" *(City of Newark v Yeskel,* 5 NJ 313, 321, 74 A2d 883, 887, *supra; Botens v Aronauer, supra,* at p 249).

The latter part of this century has seen a significant transformation of due process concepts *(see, e.g., Shaffer v Heitner,* 433 US 186; *Fuentes v Shevin,* 407 US 67; *Boddie v Connecticut,* 401 US 371; *Goldberg v Kelly,* 397 US 254; *Sniadach v Family Fin. Corp.,* 395 US 337). Among the areas rather radically affected are the traditional ones relating to methods of service considered constitutionally adequate to provide notice of events affecting interests in property *(see, Mennonite Bd. of Missions v Adams,* 462 US 791; *Greene v Lindsey,* 456 US 444; *Schroeder v City of New York,* 371 US 208; *Walker v Hutchinson City,* 352 US 112; *Mullane v Central Hanover Trust Co.,* 339 US 306).

Although *Mullane v Central Hanover Trust Co. (supra)* is regarded as a landmark case because of its holding that notice by publication is inadequate, it really articulated a shift in constitutional thought that had been underway for a considerable period of time *(see, Milliken v Meyer,* 311 US 457;

*Grannis v Ordean,* 234 US 385; *Priest v Las Vegas,* 232 US 604; *Roller v Holly,* 176 US 398). *Mullane v Central Hanover Trust Co. (supra,* at p 314) rejected the ancient and often reiterated distinction between in rem (against the thing) and in personam (against the person) actions and it rejected publication as a method sufficient to give notice, holding that "[a]n elementary and fundamental requirement of due process * * * is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections". The court went on to say:

"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, compare *Hess* v. *Pawloski,* 274 U.S. 352, with *Wuchter* v. *Pizzutti,* 276 U.S. 13, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

"It would be idle to pretend that publication alone, as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when, as here, the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice, we are unable to regard this as more than a feint" *(Mullane v Central Hanover Bank & Trust Co., supra,* at p 315).

The *Mullane* principle has been repeated on numerous occasions since 1950 *(see, e.g., Mennonite Bd. of Missions v Adams,* 462 US 791, 795, *supra; Memphis Light, Gas & Water Div. v Craft,* 436 US 1, 13; *Eisen v Carlisle & Jacquelin,* 417

US 156, 174; *Robinson v Hanrahan,* 409 US 38; *Schroeder v City of New York, supra; Walker v Hutchinson City, supra),* and it is now beyond dispute that as to persons whose identity and address are known or readily ascertainable, notice by publication is inadequate to meet the demands of due process *(see, Mennonite Bd. of Missions v Adams, supra,* at pp 798-799; *Greene v Lindsey, supra; Schroeder v City of New York,* 371 US 208, *supra; Congregation Yetev Lev D'Satmar v County of Sullivan,* 59 NY2d 418; *Seine Bay Realty v Jones,* 112 AD2d 573; *Tobia v Town of Rockland,* 106 AD2d 827; *Matter of Foreclosure of Tax Liens by County of Erie [Manufacturers & Traders Trust Co.],* 103 AD2d 636; *Bender v City of Rochester,* 765 F2d 7; *Shipley v First Fed. Sav. & Loan Assn.,* 619 F Supp 421; *Harris v Gaul,* 572 F Supp 1554; *Tracy v County of Chester,* 507 Pa 288, 489 A2d 1334).

Despite *Mullane (supra)* and its offspring, a rather apparent reluctance to upset widespread traditional practices permitted survival of the outmoded caretaker distinction in a New York case involving an in rem tax sale. In *Botens v Aronauer* (32 NY2d 243, *supra)* in 1973, the Court of Appeals sustained a tax lien procedure that provided for notice solely by publication of both the tax lien sale and the notice to redeem (Real Property Tax Law former §§ 1002, 1014). Relying on what it deemed to be the continued vitality of in rem proceedings, the court declared the " 'land stands accountable' " *(Botens v Aronauer, supra,* at p 248) and asserted that the fact that the owners are presumed to have knowledge of the laws affecting the land was " 'an answer to the contention of the insufficiency of the service' " *(Botens v Aronauer, supra,* at p 248, quoting *Ballard v Hunter,* 204 US 241, 254-255). But the *Botens* court acknowledged that practice, if not constitutional jurisprudence, was undergoing change, and noted that it was "not unmindful of the fact that * * * land ownership was [previously] much more parochial and there was a less mobile populace than now" *(Botens v Aronauer, supra,* at p 249). Finally, the court communicated its discomfort with the result it reached by urging the Legislature to "re-examine" the statutes to provide for notice "reasonably calculated to better apprise" owners of pending sales *(Botens v Aronauer, supra,* at p 249).

The Legislature responded by amending Real Property Tax Law article 10 to provide for service by mail both of the notice of sale of the tax lien and notice to redeem (Real Property Tax Law § 1002 [4]; § 1014 [3], as added by L 1976, ch 355, §§ 2, 4).

Nevertheless, Nassau County did not amend its corresponding provisions for notice of the tax lien sale (NCAC § 5-37.0), and until its recent repair of relevant portions of the code, it remained alone among the counties in the State to retain publication as the only method of giving notice of tax lien sales.

Both before and after *Botens v Aronauer (supra)*, the Supreme Court continued to extinguish any remaining basis for maintaining a distinction in the type of notice that was permissible in proceedings that formerly had been characterized as in rem. In *Robinson v Hanrahan* (409 US 38, *supra)*, *Schroeder v City of New York* (371 US 208, *supra)*, and *Walker v Hutchinson City* (352 US 112, *supra)*, the Supreme Court reiterated the principle that notice by publication in what had been considered in rem proceedings was no longer sufficient *(see also,* Note, *Due Process in Tax Sales in New York: The Insufficiency of Notice by Publication,* 25 Syracuse L Rev 769). In 1977, four years after *Botens,* the Supreme Court explicitly restated its rejection of the distinction between in rem and in personam actions and acknowledged the changes that had occurred in the jurisprudence of fair notice *(see, Shaffer v Heitner,* 433 US 186, *supra)*.

Any doubt that a different standard could be justified for notice where tax proceedings were involved was dispelled in 1983 by *Mennonite Bd. of Missions v Adams* (462 US 791, *supra)* when the Supreme Court held that the notice by publication of a tax lien sale did not meet the requirements of due process for a holder of a real property interest. The court's opinion emphasized that its determination broke no new ground since it represented a doctrine that had been consistently applied since the court's decision in *Mullane (supra) (Mennonite Bd. of Missions v Adams, supra,* at p 797).

*Mennonite (supra)* dealt with an Indiana real property tax sale statute which provided for notice by mail of the tax lien sale to the property owner but nothing more than notice by publication and posting as to others with interests in the property. In *Mennonite,* the victimized property interest holder was a mortgagee whose only notice of the tax sale was by publication. When the property owner failed to redeem the property two years after the tax sale, the parcel was conveyed to the tax lien purchaser and the mortgage lien was extinguished. Apart from the fact that the Indiana statute provided for notice by mail to the fee owner, it was similar to the

Nassau County Administrative Code, even to the point of a two-year redemption period.

Finding that a mortgagee clearly has a legally protected property interest and is thus entitled to notice reasonably calculated to apprise it of a pending tax sale, the Supreme Court held the Indiana statute unconstitutional, declaring that "[b]ecause they are designed primarily to attract prospective purchasers to the tax sale, publication and posting are unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices" *(Mennonite Bd. of Missions v Adams, supra,* at p 799). In the Supreme Court's view, "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable" *(Mennonite Bd. of Missions v Adams, supra,* at p 800). Seeking to avoid the rather clear cut consequences of this language, the majority concludes that no substantial property interest is affected when a tax lien is sold so that the Nassau County Administrative Code's failure to provide for notice of the sale to the property owner is not a fatal flaw. The only practical effect of the sale—it is argued—is to change the entity to which the unpaid taxes are owed. Furthermore, adds the majority, the code is constitutional because it provides for personal service of the notice to redeem three months before extinction of the owner's interest.

Not only does the majority's argument that only a change of entity is involved contradict *Mennonite (supra),* but it fails to recognize that sale of a tax lien creates momentous consequences for the property holder. Under the Nassau County Administrative Code, the sale of the tax lien was a condition precedent to the lienholder's obtaining a deed to the property. This condition precedent applied not only to lien purchasers who were private individuals, but to the county as well. If the county desired to convert its original lien for nonpayment of taxes into actual title to the property, it, too, was required to purchase the lien at a tax lien sale as a prerequisite to obtaining a deed or foreclosing the lien (NCAC § 5-43.0). Absent the sale, the two-year redemption period did not begin to run and a property owner could not be stripped of title for failure to pay taxes. In the language of the code, "[t]he

collection of every tax upon real estate * * * shall be enforced by a sale of the tax lien" (NCAC § 5-33.0 [a]).

But yet another significant consequence flowed from the sale of the tax lien. Until the sale, the interest rate on overdue real estate taxes ran at the rate of 12% per annum. Upon the sale (and unless the tax lien purchaser made a lower bid), the interest rate took a sharp increase. To satisfy the lien and redeem the property within six months after sale of the lien, the property owner was required to pay interest amounting to 10% of the purchase price of the lien; if the lien was satisfied between 6 and 12 months after the sale, another 10% of the purchase price was due, and yet another 10% if satisfaction occurred during the 12- to 18-month period following the sale, and finally another 10% was added after 18 months. Thus, 18 months after the sale, interest could rise as high as 40% of the purchase price of the lien (NCAC § 5-40.0). The instant tax lien was bid in at 9½% per six-month period.

As in *Mennonite (supra),* the purchaser of a tax lien in Nassau County obtained a lien which had priority over other liens and over the owner's fee title as well. Regardless of recording statutes, the tax lien attached to the property until redemption occurred and the sale of the lien commenced the running of the two-year period which could lead to forfeiture of the property owner's title.

I cannot concur with my colleagues' further reasoning that the statutory scheme survives the absence of notice of the tax lien sale because the code provides for mail service of the notice to redeem at least three months before the property deed is conveyed to the lienholder. The issue is more than whether some notice was personally served at some time prior to conveyance of the deed. The tax lien sale is an independent event which is a prerequisite to the subsequent redemption period and conveyance of a deed two years later. The sale is an integral part of the statutory scheme by which title is divested and must be strictly followed. My colleagues do not argue, nor can they, that the petitioner Helene E. McCann was given valid notice of this event. Absent a valid sale of the lien upon which the purchaser obtains the right to ultimately receive a deed, any conveyance of such a deed is invalid.

Furthermore, my colleagues' reasoning runs afoul of the implications of some important related constitutional princi-ples. The sale of the tax lien commenced the running of the two-year period which leads potentially to forfeiture of all of

the property owner's interest in the property. This forfeiture includes the excess value of an owner's property beyond the amount owed—here over $170,000 in excess of the lien and charges imposed. Forfeiture of such surplus has been held to be constitutional where the holder of a property interest was given a lengthy period for redemption and was given notice of this period *(see, e.g., Chapman v Zobelein,* 237 US 135 [five years]; *Sheehan v County of Suffolk,* 67 NY2d 52, *supra* [three years]; *Balthazar v Mari Ltd.,* 301 F Supp 103, *affd* 396 US 114 [two years]). The redemption statutes originally provided for such lengthy periods, in part, to give the owner additional time, either to raise the necessary funds to pay the outstanding obligations or to sell the property without forfeiting the surplus *(Balthazar v Mari Ltd., supra,* at p 106; Durfee & Doddridge, *Redemption from Foreclosure Sale—The Uniform Mortgage Act,* 23 Mich L Rev 825; Note, 4 U Chi L Rev 675, 676; Osborne, Mortgages, at 17-18 [2d ed 1970]).

Nassau County's failure to provide due process notice of the tax lien sale has the practical effect of reducing the redemption period to three months, for that is when the first personal service of notice by mail upon the property owner was required. Needless to say, this is considerably shorter than any of the periods in the statutes involved in the cases where excess value forfeiture has been upheld. A determination of what constitutes a sufficient redemption period has generally been a legislative judgment *(see,* 72 Am Jur 2d, State and Local Taxation, § 988, at 272). As reflected in its Administrative Code, Nassau's legislative judgment was to provide property owners with a two-year period within which to redeem a tax lien (NCAC § 5-51.0 [former b] [enacted by L 1939, ch 272, amended by L 1941, ch 679]). The fact that notice of this event is given by means that are now considered inadequate does not alter this underlying temporal judgment. Therefore, the mere provision of a mailed notice to redeem three months prior to the end of the redemption period is not an adequate substitute for notice of the tax lien sale that commences the redemption period. Furthermore, the length of time is insufficient to cure the constitutional deficiency otherwise created by the forfeiture of the value of the property in excess of the amount of the tax lien.

The majority's defense of the Nassau scheme also cites a number of cases. Reliance is thus placed on the Court of Appeals holding in *Botens v Aronauer* (32 NY2d 243, *supra)* which is referred to as "recent", even though it was decided in

1973, 10 years before *Mennonite* (462 US 791, *supra*). Cited as well are *Ballard v Hunter* (204 US 241, *supra* [dated 1907 and reflecting the outmoded in rem era]), *Lily Dale Assembly v County of Chautauqua* (52 NY2d 943, *affg* 72 AD2d 950, *cert denied* 454 US 823), and *Congregation Yetev Lev D'Satmar v County of Sullivan* (59 NY2d 418, *supra*). *Lily Dale* predates *Mennonite* and in *Satmar* the Court of Appeals declared that publication of the tax sale notice was sufficient under its former holdings but went on to add that *Mennonite* applied the principles of *Mullane v Central Hanover Trust Co.* (339 US 306, *supra*) to tax sales. The *Satmar* court then applied *Mennonite* to the facts before it and found that the tax sale met *Mennonite's* constitutional standards because it was not necessary for the local tax assessor to make "extraordinary efforts" to find an owner whose name was not on the tax rolls when giving personal notice of the tax sale *Mennonite* required. Under *Satmar,* personal notice must be given to an owner whose name does appear on the tax rolls and no one disputes the presence of Mrs. McCann's name on the Nassau County tax rolls.

It is interesting that the majority's opinion and this dissent both rely on *Satmar (supra)*. Perforce, however, the majority is arguing that *Satmar* means that *Mennonite (supra)* does not apply to New York tax sales and I am saying that the Court of Appeals is as bound as we are to accept the Supreme Court's holdings as to constitutionality. *Mennonite* has repeatedly been applied in tax sale cases in New York *(see, Seine Bay Realty v Jones,* 112 AD2d 573, *supra; Tobia v Town of Rockland,* 106 AD2d 827, *supra; Matter of Foreclosure of Tax Liens by County of Erie [Manufacturers & Traders Trust Co.],* 103 AD2d 636; *Bender v City of Rochester,* 765 F2d 7 [2d Cir], *supra*). In *Satmar* the Court of Appeals did not defy the Supreme Court; it reiterated its requirement that personal notice of a tax lien sale is a constitutional requisite but held that extraordinary efforts to locate missing owners are not necessary.

Contrary to the majority, I also cannot read *Sheehan v County of Suffolk* (67 NY2d 52, *supra*) as overruling the Supreme Court and reinstating as constitutional in this State the distinction between in rem and in personam actions as far as notice is concerned. The issue in *Sheehan* was not whether personal notice of a tax lien sale was required—the Suffolk County Tax Act provided for that—but whether the county was obliged in addition to inform the property owner that the

tax liens would not be subject to competitive bidding and that the surplus value over the lien would be forfeited. *Sheehan* merely decided that no constitutional mandate required the furnishing of this additional information in the personal notice of a tax lien sale given to a property owner who, unlike Mrs. McCann, had been served with the notice of tax lien sale and all other notices *Sheehan v County of Suffolk, supra,* at p 57).

The majority further argues that the Indiana statute reviewed in *Mennonite (supra)* was a "title" statute rather than a "lien" statute, meaning thereby that the Supreme Court found unconstitutionality in that case because what was sold without personal notice in Indiana was not merely a tax lien but actual title to the property. While I cannot see how that could make a difference since the lien affected a substantial interest in property, the fact is that the Supreme Court regarded what was sold under the Indiana statute as a tax lien. Thus, in describing the statute, that court noted:

"The purchaser acquires a certificate of sale which constitutes a lien against the real property for the entire amount paid * * * This lien is superior to all other liens against the property which existed at the time the certificate was issued * * *

"If no one redeems the property during the statutory redemption period, the purchaser may apply to the county auditor for a deed to the property.

"The tax sale immediately and drastically diminishes the value of this security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors" *(Mennonite Bd. of Missions v Adams,* 462 US 791, 793-794, 798, *supra).*

The rule enunciated by the Supreme Court in *Mennonite (supra)* interprets the Federal Constitution and is thus the law of the land. Under *Mennonite,* the owner of a substantial property interest is entitled to notice of a tax lien sale by personal service. Since the former tax collection enforcement procedures of the Nassau County Administrative Code did not provide for such notice, they are unconstitutional on due process grounds and Mrs. McCann, the owner of the substantial property interest, is entitled to cancellation of the County Treasurer's deed to Mrs. Stone.

## IV

The former Nassau County scheme is also unconstitutional

because it makes no provision for a hearing before the taxpayer's interest is extinguished. Due process entitles a person facing the deprivation of any significant property interest at the hand of the State to an opportunity to be heard before the final loss of the interest *(Logan v Zimmerman Brush Co.,* 455 US 422, 433; *Parratt v Taylor,* 451 US 527, 540; *Board of Regents v Roth,* 408 US 564, 570-571, n 8; *Fuentes v Shevin,* 407 US 67, 83, *supra; Mullane v Central Hanover Trust Co.,* 339 US 306, *supra; Sharrock v Dell Buick-Cadillac,* 45 NY2d 152, 163). Ownership of real property clearly constitutes a significant property interest *(see, Texaco, Inc. v Short,* 454 US 516; *Lloyd Corp. v Tanner,* 407 US 551; Nowak, Rotunda & Young, Constitutional Law, ch 15, § II [D] [1], at 546 [2d ed]), and since the conveyance to the lienholder by the County Treasurer deprives the taxpayer of that interest, a hearing is required before the deprivation occurs. If there is a right to a hearing before a merchant can recover household goods because the purchaser failed to make the loan payments *(Fuentes v Shevin, supra),* certainly there is the right to a hearing before the County Treasurer can take the action of conveying an owner's real property to a lienholder because the owner did not pay real estate taxes.

Although the Nassau County tax collection scheme contains a procedure to contest the tax assessment placed on real property (NCAC § 6-11.0), the right to be heard as to the amount of the assessment or whether the property should be assessed at all has no relationship to the right to contest enforcement procedures undertaken at a later time relative to nonpayment of taxes. Under the former code provision, there was no opportunity to challenge the calculation of the tax, the Treasurer's statement that the tax had not been paid, the sufficiency of the notice of the tax lien sale, or the regularity of all the actions the lienholder was required to take in order to be entitled to a conveyance of the property before that property is taken away from the owner. While State law mandates the County Treasurer to cancel the sale if he discovers that for any reason it was invalid (Real Property Tax Law § 1026), even that statute contains no procedure for such a determination, stating only that a cancellation made after the conveyance shall be made "on application of any person having any interest [in the property] at the time of the sale, on receiving proof thereof" (Real Property Tax Law § 1026 [2]). The NCAC contained no mechanism for the Trea-

surer to adjudicate claims and no mechanism for the county to give notice of the possibility of forfeiture or the opportunity to protest the sale. Due process requires not just the bare right to be heard, however, but the right to be heard in a meaningful manner *(Parratt v Taylor,* 451 US 527, 540, *supra; Armstrong v Manzo,* 380 US 545, 552), of which the aggrieved party has adequate notice *(Memphis Light, Gas & Water Div. v Craft,* 436 US 1, 15, *supra).* "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing' " *(Memphis Light, Gas & Water Div. v Craft, supra,* at p 14). Where no notice of the possibility of challenging the proposed deprivation is given, this purpose is not satisfied.

The authorities relied upon by the majority do not support the conclusion that the NCAC provisions can survive constitutional scrutiny in the absence of any provision for a hearing or notice of the right to a hearing. *Congregation Yetev Lev D'Satmar v County of Sullivan* (59 NY2d 418, *supra)* and *Botens v Aronauer* (32 NY2d 243, *supra)* do not deal with the right to a hearing before the conveyance to the lienholder. Although there is language in *Sheehan v County of Suffolk* (67 NY2d 52, 59, *supra)* indicating that the requirements of due process are satisfied by the opportunity to contest the tax assessment under Real Property Tax Law article 7 when it is placed on the property, the issue here is entirely unrelated to grievance procedures when tax assessments are placed on property. *Sheehan* merely decided that property owners were not denied due process by the failure to inform them of the absence of competitive bidding at the tax sale and that they would not receive any surplus if the property was conveyed to a lienholder. The lack of an opportunity for a hearing was not at issue. The absence of any provision for a hearing or notice of the right to a hearing renders the former NCAC provisions unconstitutional, deprives Mrs. McCann of her property without due process of law, and requires cancellation of the deed to Mrs. Stone.

Having come to the conclusion of unconstitutionality on the grounds I have mentioned, I see little merit in the further claim that the final notice to redeem served on Mrs. McCann was so obfuscated by legal jargon and so unclear that it provided constitutionally inadequate notice of the consequences of nonredemption. I do not believe that that deficiency rises to the level of unconstitutionality.

## V

Our function as Judges is to do justice—a sometimes elusive concept that implicates considerations both moral and legal. There are times, of course, when despite our inclination to provide relief in a particular case, we are precluded from doing so because of the overpowering influence of past precedent or the likelihood that a new precedent might inflict more harm than good in future cases. Here, the precedents support our acting to right what appears to be an extraordinarily unfair result and at the same time to decree that our determination shall not disturb settled tax titles of the past *(see, Chevron Oil Co. v Huson,* 404 US 97; *Linkletter v Walker,* 381 US 618; *Gurnee v Aetna Life & Cas. Co.,* 55 NY2d 184, *cert denied* 459 US 837). The former tax collection provisions of the NCAC were not intended to punish taxpayers who omitted through oversight or error to pay their taxes, for the purpose of tax sales is not to strip taxpayers of their property but to insure the collection of taxes *(Tracy v County of Chester,* 507 Pa 288, 489 A2d 1334, 1339, *supra).* The collection of taxes cannot be implemented, however, without due process of law, and in this case that ancient standard of the Constitution was not met.

Accordingly, I vote to grant reargument and thereupon to reverse the judgment of Special Term, convert this proceeding into a declaratory judgment action, declare the former real estate tax collection enforcement provisions of the Nassau County Administrative Code unconstitutional, decree that our judgment shall not have retroactive effect on tax titles not currently in litigation, and finally direct and decree that the deed from the County Treasurer to the respondent Stone is a nullity and that the County Treasurer should cancel it.

LAWRENCE, EIBER and KOOPER, JJ., concur; LAZER, J. P., concurs in the granting of reargument but otherwise dissents and votes to recall and vacate the decision and order dated March 17, 1986, reverse the judgment appealed from, convert the instant proceeding to an action for a declaratory judgment, declare the former real estate tax collection provisions of the Nassau County Administrative Code unconstitutional, further declare that that declaration shall not have retroactive effect on tax titles not currently in litigation, and declare that the deed from the County Treasurer to the respondent

Stone is a nullity and should be canceled, with an opinion in which RUBIN, J., concurs.

Ordered that the motion is granted to the extent that reargument is granted, upon reargument the original result is adhered to, and the motion is otherwise denied, without costs or disbursements.