OPINION OF THE COURT
Herman Cahn, J.
This petition was commenced as a result of a filing by the Bank of New York Co. (BNY) of an application with the New York State Banking Board seeking approval to make a hostile takeover offer for the Irving Bank Corp. (IBC). Petitioner IBC brings this petition seeking:
1. Access to all information submitted by BNY to the Banking Board which it has not previously obtained;
2. An injunction enjoining respondents from making a determination on BNY’s application until such information is disclosed; and
3. an injunction enjoining respondent Halvorson from participating in the determination of BNY’s application (this latter request has been withdrawn in view of the stipulation made in open court).
THE FACTS
On September 25, 1987, BNY announced its intention to acquire IBC.
Under this State’s Banking Law, prior Banking Board approval is required before a company may acquire a bank holding company. (Banking Law § 142 [1].) In addition, the prior approval of the Federal Reserve Board (FRB) is also required. Therefore, in October 1987 BNY filed an application with the Banking Department for such approval which application was revised and supplemented in November of 1987. The application consisted in part of the application previously submitted to FRB pursuant to Federal law (Bank Holding Company Act, 12 USC § 1841 et seqj, and subsequent revisions and amendments to said application.
BNY sought confidential treatment of major parts of said application pursuant to section 89 (5) (a) (1) and section 87 (2) (d) of the Public Officers Law. After considering the matter, *851 respondent Superintendent of Banking granted confidential treatment to part of the application and denied it as to other parts. When BNY had previously filed its application with FRB, it sought and obtained confidential treatment for parts of that application. Said decisions as to confidential treatment were rendered in writing in great detail.
On November 16, 1987, IBC filed a request with the Banking Board, under the Freedom of Information Law (Public Officers Law art 6 [FOIL]), for access to the nonpublic portions of BNY’s application. On November 30, 1987, the Banking Department granted in part and denied in part IBC’s FOIL request for the nonpublic portions of the State materials; on December 31, 1987 the Banking Board granted in part and denied in part that part of the FOIL request seeking disclosure of the nonpublic portions of the Federal parts of the application.
Previously, on December 11, 1987, IBC had submitted a comment on BNY’s application to the Banking Department. IBC claims it was prejudiced in such submission because it did not have access to the confidential material. On December 29, 1987, BNY submitted response to the IBC comment for part of which response it claimed confidential treatment. On January 14, 1988, IBC made a further FOIL request for the withheld portions of that response.
On January 12, 1988, BNY appealed that part of the December 31, 1987 determination which granted IBC access to parts of the confidential information. On January 20, 1988, IBC appealed from those parts of both the November 30, 1987 and December 31, 1987 determinations which were adverse to it.
On January 22, 1988, the Superintendent, ruling on BNY’s appeal, affirmed in part and reversed in part the December 31 determination and denied IBC’s appeal in its entirety.
THE LAW
A. Freedom Of Information Law.
Certain parts of BNY’s application were not furnished to IBC, and IBC seeks an order of this court directing that the complete application be made available to it pursuant to FOIL.
FOIL was enacted to provide the broadest possible access to government records. All government records are presumptively subject to disclosure, unless they fall within the statu *852 tory exemption. (Matter of Miracle Mile Assocs. v Yudelson, 68 AD2d 176.) "The statutorily stated policy behind FOIL is to promote '[t]he people’s right to know the process of governmental decision-making and to review the documents and statistics leading to determinations’ [citing statute]”. (Washington Post v New York State Ins. Dept., 61 NY2d 557, 564.) However, consistent with the broad right to know is the right to privacy and the right to have certain documents remain confidential. Section 89 (5) of the Public Officers Law specifically permits a submitter of documents to seek exemption from disclosure if the documents are of the type described in section 87 (2) (d). Such exemption relates to records maintained which, if disclosed, would cause substantial injury to the competitive position of the subject enterprise.
Section 89 (5) sets forth a very detailed schedule within which applications for confidential treatment and appeals therefrom must be made. Said schedule differs from the general schedule set forth for other FOIL applications for exemptions and appeals therefrom. The reason why the Legislature mandated said separate schedule is quite obviously because the information which is the subject of section 89 (5) is information submitted by nongovernmental entities and is information which it is claimed could hurt the submitter’s business and competitive position if released. In fact, the memorandum submitted in support of said section when it was enacted by the State Senate specifically stated that its purpose was "to provide for more secure handling of certain trade secret information submitted to State agencies, and for improved procedures for determining whether such information should be excepted from disclosure”. (1981 NY Legis Ann, at 467.) The section was to contain "a clear, fair and uniform procedural framework for the determination of requests for exceptions from disclosure in a range of cases”. (Ibid, [emphasis added].)
IBC failed to appeal respondent Superintendent’s determination within the time set forth in the statute. By virtue thereof this proceeding cannot be brought. On November 30 and December 31, 1987, the Banking Board rendered the determinations sought to be appealed herein. No appeal was filed by IBC to the Superintendent until January 20, 1988. This is 13 business days after the latest decision was received. (The decision although addressed to BNY’s counsel was delivered by Telefax on the same day to IBC’s counsel. Since BNY’s application for confidential treatment and IBC’s application *853 for disclosure relate to the same documents, the decision effectively decided both applications.)
This 13-day period is more than the 7 business days permitted by section 89 (5) (c) (1), therefore, it was untimely. IBC’s counsel argue that the Banking Department in its own rules permitted 30 days to appeal. (Supervisory Procedure G 106, 3 NYCRR 106.5 [b].) However, that provision does not relate to the confidential material covered by section 87 (2) (d) and section 89 (5). It was clearly the intent of the Legislature to afford such section 89 (5) and section 87 (2) (d) material more protection than general governmental records. In view of the fact that any extension of time to IBC to appeal the withholding from it of such confidential material by the Superintendent would be an act directly prejudicing or weakening the position of BNY, the Superintendent will not be permitted to unilaterally extend the time period set forth in the statute.
In view of the failure to file a timely appeal to the Superintendent, IBC has not exhausted its administrative remedies and insofar as the within application seeks an order reversing the Superintendent’s decision, it must be denied for that reason. (Matter of Radio City Music Hall Prods., 121 AD2d 230; Matter of Town of Hempstead v Commissioner of State of N. Y. Off. of Mental Retardation & Developmental Disabilities, 119 AD2d 582.)
The court has nevertheless examined the documents which have been ruled confidential by the Superintendent, in camera. (See, Matter of Westchester Rockland Newspapers v Kimball, 50 NY2d 575, 582.) In a CPLR article 78 proceeding, the court, in reviewing the actions and decisions of an administrative agency has traditionally been directed to determine only whether the agency acted in an arbitrary or capricious manner. Great weight is given to the expertise of the agency in making its determination and the court must decide whether the agency’s actions are rational. If the agency did not act in an arbitrary and capricious manner, i.e., if the actions were not irrational and had some basis in fact, the court may not disturb or alter such determinations. (Matter of Pell v Board of Educ., 34 NY2d 222; Matter of Johnson v Ambach, 74 AD2d 986; Matter of Niagara Mohawk Power Corp. v Public Serv. Commn., 67 AD2d 802.) Using said guidelines, and bearing in mind that under FOIL the burden of proof to show that a document should not be released is on the person seeking to maintain its confidentiality, the court has determined that, except as to one paragraph in the documents, the agency *854 acted properly. Were it to reach this issue, the court would affirm the agency’s FOIL determination except for such one paragraph.
B. IBC’s Constitutional Claim.
IBC claims that release of the withheld information is mandated by the Due Process Clause of our NY Constitution. It claims that it has a constitutionally protected interest in the administrative proceeding with respect to BNY’s application.
Due process requires that an opportunity to be heard must be afforded one facing the deprivation of a property interest at the hands of a governmental entity. (Board of Regents v Roth, 408 US 564; McCann v Scaduto, 123 AD2d 111.)
IBC’s constitutional rights have not been violated. At the outset, the court notes that the sole function of the Banking Board is to decide whether to allow BNY to make an offer. It must consider the proposal as it affects the banking system, industry and public. It does not play an active part in the transaction nor approve it as a sound course of action for BNY or IBC. Therefore IBC has no "property” rights in the proceeding. IBC must have more than an abstract need or desire for the information; it must have legitimate claim of entitlement to it. (Board of Regents v Roth, supra.)
Interestingly enough, Banking Law § 142 (1) does not require the Superintendent to even notify the subject of the acquisition or to offer it an opportunity to take part in the proceeding. This is consistent with the public concerns that the Banking Board is to consider as contrasted to the private concerns of the target of the offer. In other words, the Banking Board is only to make determinations based on the public welfare, and not judgments as to whether the proposed acquisition would be beneficial or not for the parties thereto.
Having said that, IBC has no more of a right to access than any other member of the public and as such it has received the great bulk of material previously and through use of FOIL has utilized the applicable procedures to obtain maximum disclosure to the limited degree set forth herein.
IBC has been given notice of the issues and in fact has submitted almost 1,000 pages of documentation in opposition to BNY’s application. Furthermore, even if the application is approved by the Banking Board, the parallel Federal application must be considered and approved by FRB before BNY *855 may take any substantive action. Even then, the Federal statute mandates a 30-day automatic stay. Thus, before BNY may take any substantive steps in direct support of its offer to acquire IBC, IBC will have much time to oppose it and to advise its shareholders and others of the reason for its opposition.
The court has considered the State administrative procedure arguments raised as well as the other arguments raised and finds them to be of no merit.
Other than the above-referred-to arguments none have been made which would warrant or permit the court to enjoin the Banking Board from meeting and transacting whatever business is lawfully before it.
The petition is denied. Cross motion to dismiss is granted.