OPINION OF THE COURT
Kaye, J.
Each of these article 78 proceedings challenges the forfeiture of petitioner’s home under the former real estate tax collection enforcement provisions of the Nassau County Administrative Code (the Code)[1] *111on the ground that the Code’s *170 procedures violated the Federal constitutional guarantee of due process of law. We agree with petitioners that the Code’s failure to provide property owners with actual notice of tax lien sales was a deprivation of due process.
Summary of the Relevant Code Provisions
At the core of both proceedings are the former provisions of the Nassau County Administrative Code pertaining to real estate tax collection enforcement procedures.
The Code provided that each year the Nassau County Treasurer would compile a list of properties for which taxes had not been paid in the previous year. These taxes became a tax lien against each property (Code § 5-24.0 [4]). The County Treasurer then set a date for a sale of these tax liens (Code §§ 5-37.0, 5-39.0 [a]). The list of tax liens, together with a notice to property owners that the liens would be sold unless the outstanding charges were paid by a certain date, had to be published three times in a newspaper of general circulation (Code § 5-37.0 [a], [c]). The only provision in the Code for notice to the property owner of the tax lien sale was by publication; there was no provision for actual notice. The tax liens for which payment was not made by the date specified :in the published notice were then sold at public auction to the bidders willing to accept the lowest rate of interest on the outstanding balance (Code § 5-37.0 [c]; § 5-39.0 [a]; § 5-40.0).
The sale triggered a two-year redemption period. During that time a property owner could satisfy the lien by making payment to the County Treasurer of the outstanding taxes, together with interest, penalties and expenses (Code §§ 5-48.0, 5-50.0). Prior to the tax lien sale, the annual interest rate was 12% on overdue taxes. After the sale, however, the Code provided the following maximum interest and penalties. To satisfy the lien in the first six months after the tax lien sale, a property owner had to pay the overdue taxes and accrued interest plus a penalty equivalent to a percentage of the lien purchase price (the lesser of 10% or the interest rate agreed to by the purchaser). To redeem in the second six-month period, a second identical penalty was imposed; a third and fourth penalty were added for successive periods (Code § 5-40.0). In addition to satisfying the back taxes, interest and *171 penalties, the owner had to reimburse the County and the lien purchaser for their expenses (Code § 5-50.0).
At any time after the expiration of 21 months from the tax lien sale, the purchaser of the tax lien had to serve a three-month notice to redeem by certified mail, return receipt requested, upon the record owner and other specified parties (Code § 5-51.0). The notice informed the recipient that title to the property was to be conveyed to the lienholder unless the lien was redeemed by the end of the redemption period (Code § 5-51.0 [former b] [4]). If the owner failed to redeem in the specified period, the lienholder either had to commence a foreclosure proceeding to obtain title, or simply apply to the County Treasurer for a deed of conveyance (Code § 5-51.0 [former b]). If the lienholder chose the latter option, the County Treasurer, upon receipt of the notice to redeem and proof of service, simply issued a deed of conveyance to the lienholder (Code § 5-51.0 [e]; § 5-53.0), vesting absolute title in the lienholder (Code §§ 5-53.0, 5-54.0 ¡b]).
The Code Provisions as They Were Applied to Petitioners
Petitioner Helene McCann lost her 30-year residence worth approximately $175,000 for a tax debt of $864.50; in Rinaldo a home worth more than $90,000 was sold because of unpaid taxes of $463.92. In both cases the tax lien sales — at which respondent Shirley Stone acquired her interest in each property — set in motion the process ending two years later in the transfer by respondent John Scaduto, Nassau County Treasurer, of absolute title to both homes to respondent Stone, upon her demand. No actual notice of the tax lien sale was shown to have been furnished to either owner,[2] although at all *172 times their names and addresses were known to the County. Instead, in accordance with the Code, notice of the tax lien sale was published in a newspaper of general circulation. The only actual notice provided to each petitioner before the conveyance of title to her home was a notice to redeem served by certified mail three months before the redemption period expired. There was no foreclosure proceeding; the property owners were afforded no right to a hearing and no right to return of the very substantial surplus over their indebtedness.
In both cases, the lien was not redeemed within the two-year period and the property was conveyed to respondent Stone. Each homeowner then instituted an article 78 proceeding seeking an order vacating the deed and directing the County to accept payment necessary to satisfy the tax liens. They contended that they had been denied due process because they had not received actual notice of the tax lien sales, because they had been denied any hearing before conveyance of the property, and because the notice they did receive was inadequate to inform them of the situation. In McCann, Special Term dismissed the petition and the Appellate Division affirmed. In Rinaldo, Special Term granted the petition and the Appellate Division reversed. Upon reargument the Appellate Division adhered to its dispositions.
Concluding that the failure to provide petitioners with actual notice of the tax lien sales in the circumstances deprived them of due process of law, we now reverse the Appellate Division orders. In view of this disposition, we do not reach the additional two grounds tendered in support of reversal.
Development of the Concept of Due Notice in Proceedings Affecting Property
The central meaning of procedural due process has long been clear. "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified” at a reasonable time and in a reasonable manner (Baldwin v Hale, 1 Wall [68 US] 223, 233, quoted in Fuentes v Shevin, 407 US 67, 80). But the actual requisites of proper notice have not been static. Historically, the reasonableness of notice depended on whether a proceeding was characterized as in personam or in rem. Generally, :if in personam, due process required personal service or its equivalent (see, e.g., Hamilton v Brown, 161 US 256; Pennoyer *173 v Neff 95 US 714); but if in rem, notice by publication was good enough (see, e.g., Longyear v Toolan, 209 US 414; Ballard v Hunter, 204 US 241; Leigh v Green, 193 US 79).
Several justifications were commonly advanced for the sufficiency of constructive notice in in rem proceedings. First, nonresident landowners — who themselves could not be served —often had local caretakers to watch over their land and advise them of published notices affecting their property (see, e.g., Ballard v Hunter, 204 US 241, 254-255, supra; Huling v Kaw Val. Ry., 130 US 559, 563-564). Second, all landowners were charged with a duty to keep informed about the status of their land and presumed to know the consequences of nonpayment of taxes (see, e.g., Longyear v Toolan, 209 US 414, 418, supra). Third, in in rem proceedings, only "the land itself’ was in issue; affected individuals did not have to be present (see, e.g., Ballard v Hunter, 204 US 241, 258, supra). Finally, costly notice requirements impeded the State’s vital interest in collecting its revenues quickly and inexpensively, making constructive notice a reasonable balance of the competing interests (see, e.g., Leigh v Green, 193 US 79, 89, supra; see also, Comment, Mennonite Board of Missions v Adams: Insufficient Notice Under the New York In Rem Statutes, 33 Buffalo L Rev 389, 392-393).
While continuing to retain some validity today, the concept that publication affords due notice in all in rem proceedings has been markedly eroded over time.
In Mullane v Central Hanover Trust Co. (339 US 306)— decided nearly 40 years ago — the Supreme Court concluded that the rigid distinction between in personam and in rem proceedings could no longer be justified as a basis for denying property owners meaningful notice of proceedings affecting their property interests. (Id., at 312-313.) Instead, the court embraced a flexible standard: an "elementary and fundamental requirement of due process * * * is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.” (Id., at 314.) The "means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.” (Id., at 315.) Whether the proceeding involved person or property, due process required a balancing of the State’s interests and the individual’s interest in actually being informed of proceedings affecting rights or property. (Id., at 314-315.)
*174 In Mullane itself, published notice of an action to settle the accounts of a common trust fund was held insufficient to inform the beneficiaries — whose names and addresses were known — of the pending action. (Id., at 320.) Notice by publication was inadequate because "under the circumstances it [was] not reasonably calculated to reach those who could easily be informed by other means at hand.” (Id., at 319.) Following Mullane, constructive notice of condemnation proceedings has been recognized as inadequate to notify a landowner whose identity was known to the City (Walker v City of Hutchinson,. 352 US 112); publication and posting were held insufficient to apprise a property owner of condemnation proceedings when his name and address were readily ascertainable from public records (Schroeder v City of New York, 371 US 208); and posting of a summons on an apartment door was found inadequate to provide notice in forcible entry and detainer actions (Greene v Lindsey, 456 US 444).
Such decisions marked a departure from the early justifications underlying the conclusion that published notice was due notice, and a recognition that the "caretaker” theory, the presumption that every landowner read every newspaper of general circulation, and the notion that only "the land itself’ was affected, had become increasingly unrealistic. Measured against these fictions supporting constructive notice, the simple act of mailing notice to a known property owner — actual notice — emerged from the succession of Supreme Court decisions as minimal "due process.” As succinctly stated in Schroeder v City of New York (371 US 208, 212-213, supra): "The general rule that emerges from the Mullane case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question.”
In Botens v Aronauer (32 NY2d 243, appeal dismissed 414 US 1059), this court addressed the question whether notice by publication was adequate in the case of a tax sale — where the State’s vital interest in collecting revenues remains a central concern — and we concluded that there was no requirement of actual notice either of a tax lien sale or of the redemption period; constructive notice sufficed. We distinguished Mullane on the ground that the property holder there had no reason to expect that its property interest was being affected, while in the case of a tax sale, the taxpayer had notice of its obligation to pay taxes and of the consequences flowing from nonpay *175 ment. Even in Botens (supra, at 249), however, we recognized the progression of the law from the time when "land ownership was much more parochial and there was a less mobile populace than now.” We invited the Legislature to "address itself to this problem [and reexamine the statutes in issue] with the view that owners of property be afforded notice reasonably calculated to better apprise them of the pendency of either a tax sale or of the final date of redemption.” (32 NY2d 243, 249-250, supra.) The Legislature indeed accepted the court’s invitation, and promptly amended the Real Property Tax Law to require personal service upon the property owner of both the notice of sale of the tax lien and the notice to redeem, a requirement which would be applicable as well when municipal laws contained no specific provision for notice (Real Property Tax Law § 1002 [4]; § 1014 [3]; § 2006).
In Mennonite Bd. of Missions v Adams (462 US 791), the Supreme Court thereafter specifically applied Mullane’s balancing test to real property tax proceedings. In Mennonite, an Indiana county sued a property owner for nonpayment of taxes, complying with statutory notice requirements by mailing notice to the owner, by publication, and by posting the notice of tax sale. The property was sold at the tax sale and, at the close of a two-year redemption period, the county sent the landowner an additional notice stating that title would pass to the tax-sale purchaser if the taxes were not paid. The landowner ignored the notice. Upon expiration of the redemption period, the county issued a tax deed to the tax-sale purchaser vesting all title in him free and clear of all liens or encumbrances — including the interest of a mortgagee who had never been given actual notice of the tax sale or pending title transfer. The Supreme Court concluded that the notice provided to the mortgagee was not "due process.”
A mortgagee, the Supreme Court reasoned, has a substantial property interest that is significantly affected by a tax sale and is therefore entitled to notice reasonably calculated to apprise it of the event. Notice by publication and posting is unlikely to reach those who, although they have an interest in the property, do not make unusual efforts to stay abreast of such notices. A county’s use of these indirect forms of notice is not reasonable where there are inexpensive and efficient direct alternatives — such as personal delivery or mailing. "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property inter *176 ests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.” (Id., at 800.) This court subsequently applied Mennonite in Congregation Yetev Lev D’Satmar v County of Sullivan (59 NY2d 418), a case involving a tax lien sale. Although the facts there supported the adequacy of constructive notice, we recognized that actual notice must be given to "all parties readily ascertainable who have a substantial interest in the property.” (Id., at 425.)
What seems plain from this progression of the case law is that where the interest of a property owner will be substantially affected by an act of government, and where the owner’s name and address are known, due process requires that actual notice be given. To the extent that Botens holds that actual notice of tax sale proceedings need not be given a known property owner, it has already been implicitly overruled by Mennonite and Congregation Yetev Lev D’Satmar, and should not be followed.[3]
Application of the Developed Concept of Due Notice to These Facts
In an effort to distinguish Mennonite, the court below and the dissent in this court point to several factual differences between the Indiana tax sale and the Nassau County tax lien sale. Of course there are factual differences. What is common to both the Indiana statute and the Nassau County Administrative Code, however, is the fact that the sales create immediate, substantial adverse consequences for the property holder. The Nassau County tax lien sale is the event that moves the Sword of Damocles directly over the head of a property owner. The tax lien sale commences enforcement proceedings that may terminate 24 months later in forfeiture upon the mere request of the tax lien purchaser, without any requirement or opportunity for a hearing or any court intervention. The tax lien sale is a condition precedent to the transfer of title.
*177 Moreover, substantial interest, penalties and expenses accrue upon that sale. Beginning 18 months from the tax lien sale, for example, a property owner seeking to redeem property may have to pay not only the taxes and interest but also a penalty approximating 40% of the lien purchase price, and reimburse both the Town and the lien purchaser for their actual expenses. These costs cannot be shrugged off as insignificant consequences, particularly for persons such as petitioner McCann subsisting on Social Security payments and a weekend job delivering magazines, and particularly when measured against the negligible cost and burden that would be imposed on the County if it were required to mail a notice to her.
Our dissenting colleagues apparently do not dispute the statement of the law set forth in this opinion, but disagree that the consequences of the tax lien sale are substantial, and they therefore conclude that constructive notice to petitioners was good enough. We conclude that the tax lien sale, in the context of this Code, creates "momentous consequences” for the homeowner (123 AD2d 111, 126) and that — balanced against these consequences — requiring that a notice be mailed to a person whose name and address are known imposes a minimal burden on the County. Actual notice is therefore required.
Nor can the Nassau County statutory scheme withstand constitutional scrutiny because — unlike Mennonite, where there was no provision for actual notice at all — the Code requires mailing of the notice to redeem to the property owner three months before the deed is conveyed to the purchaser of the tax lien. We recognize that what is reasonable for purposes of notice is usually a legislative policy determination; however, whether legislative choice passes constitutional muster is a decision for the courts. It is significant here that the Nassau County legislators did not design a scheme providing for only three months to redeem. The mechanism designed by the legislators to provide what they deemed was adequate notice to property owners contemplated that before automatic forfeiture, there would be a 24-month redemption period. It is their failure to provide due process notice of the tax lien sale that has shrunk that period to a mere three months and defeated the legislative intention. We thus cannot agree with the court below that we should now redesign the legislative scheme by substituting three months for 24 as the redemption *178 period. Moreover, notice which does not afford a realistic opportunity to produce the funds necessary to avoid forfeiture of the title or sell the encumbered property does not afford due process. The truncated three-month period would in any event be troubling as satisfying the due process notice requirement, particularly where very large surpluses are at stake.
To uphold a statutory scheme permitting substantial impairment of a known property owner’s title to her home without actual notice to her would ignore the clear import of Mennonite and signal a return to the fictions of landownership appropriate to an earlier time. The realities of our complex, mobile society are fundamentally inconsistent with a statutory scheme premised on constructive notice as the means of informing known property owners of events which hasten the ultimate forfeiture of their homes, with no opportunity for court intervention, when they can so easily and inexpensively be advised by letter.
Accordingly, in each case, the order of the Appellate Division should be reversed, with costs. The proceedings should be converted to declaratory judgment actions, the former real estate tax collection enforcement provisions of the Nassau County Administrative Code under which respondent Stone obtained Treasurer’s deeds should be declared unconstitutional, the deeds declared a nullity, and petitioners permitted to redeem their properties. Recognizing that our declaration could have broad, unsettling effect on the marketability of otherwise settled titles to property, we conclude that our decision in these cases is to have no general retroactive application and shall apply only to cases where tax titles are " 'still in the normal litigating process’ ” (see, Gurnee v Aetna Life & Cas. Co., 55 NY2d 184, 191, quoting Gager v White, 53 NY2d 475, 483).

. "[Prompted in part by the outcry caused by the extreme results” of the McCann case and other cases, as the dissenters below noted (123 AD2d 111, 119), the Code has been amended, effective November 17, 1986, substantially changing the provisions applicable to these appeals (Local Laws, 1986, No. 13 of County of Nassau). We do not consider the constitutionality of the new procedures.

. Respondents urge us to avoid the constitutional issue by reading into the Code the notice provisions of the Real Property Tax Law (RPTL 1002)— which require mailed notice to owners of impending tax sales — and presuming that the statutory requirement was satisfied (see, e.g., Matter of Driscoll v Troy Hous. Auth., 6 NY2d 513). We agree with the court below (123 AD2d 111, 114, n 2), however, that since the Code contains its own specific provision for notice, the RPTL notice provision does not apply (see, RPTL 2006; Matter of Stevens Med. Arts Bldg. v City of Mount Vernon, 72 AD2d 177).
The dissent (at 179) speaks of evidence in the record indicating that petitioner McCann was sent actual notice, in effect mooting the constitutional issue. Petitioner denied that she received notice. As the Appellate Division found on the facts, the County failed to establish that actual notice had been given to petitioner.

. Respondent’s assertion that Mennonite can be applied only prospectively from June 1983, and not retroactively to these prior tax lien sales, is without basis. Mennonite did not establish new law, but rather carried forward a principle of fair notice made clear in Mullane; moreover, application of the rule to these sales will further, not undermine, its salutary purpose (see, Chevron Oil Co. v Huson, 404 US 97, 106-107). Even where a new principle has only prospective application, the party who has successfully challenged existing law may have the benefit of its reversal (see, e.g., Stovall v Denno, 388 US 293, 301).