AGNES POMPE, Individually and as Coexecutors of JOSEPH ENGELMANN, Deceased, et al., Appellants, v CITY OF YONKERS et al., Respondents.

In 1958 Westboro Realty Corp. (hereinafter Westboro) became the record owner of a parcel of real property located in the City of Yonkers, New York. The president and sole shareholder of Westboro was Joseph Engelmann, now deceased. For some time a partnership, known as Saw Mill River Nursing Home, of which Engelmann was apparently a member, operated a nursing home on the property. In 1976, the partnership was dissolved, and real estate taxes were not paid on the property from 1977 until 1981.

On August 29, 1980, Engelmann died, leaving his stock in Westboro to the plaintiff Agnes Pompe, his niece and the executrix of his estate. On September 26, 1980, the City of Yonkers commenced an in rem tax foreclosure action against Westboro. Yonkers then allegedly filed the list of delinquent taxes and published notices of foreclosure. Additionally, Yonkers sent notice of the action to Saw Mill River Nursing Home,

care of Joseph Engelmann, to Engelmann's home at 43 Amberson Avenue, Yonkers, New York, where Pompe also resided. The notice named Saw Mill River Nursing Home as the debtor.

It is well settled that in an in rem proceeding "where the interest[s] of a property owner will be substantially affected * * * and where the owner's name and address are known, due process requires that actual notice be given" *(Matter of McCann v Scaduto,* 71 NY2d 164, 176; *see, LVF Realty Co. v Harrington,* 146 AD2d 607; *see also, Mennonite Bd. of Missions v Adams,* 462 US 791; *Schroder v City of New York,* 371 US 208; *Mullane v Central Hanover Bank & Trust Co.,* 339 US 306).* Thus, in commencing an in rem tax lien foreclosure action, the defendants were required to comply with the provisions of the RPTL, which state that the list of delinquent taxes must contain "[t]he name of the last known owner of [the subject property] as the same appears on the assessment roll of the tax district for the year preceding the calendar year in which such list is filed" (RPTL 1122 [3] [b]), that the enforcing officer "cause a copy of [that] notice to be mailed to the last known address of each owner of real property affected * * * as [it] appears upon the records in the office of the enforcing officer" (RPTL 1124 [2]), and that in assembling the tax assessment roll the assessor "shall complete an inventory of all the real property located [in each city and town] and the names of the owners thereof" (RPTL 500 [1]).

While the courts have held that a municipality must examine the tax assessment rolls as well as the recorded deeds in order to provide actual notice *(see, Masick v City of Schenectady,* 164 AD2d 488; *Alliance Prop. Mgt. & Dev. v Andrews Ave. Equities,* 133 AD2d 30, *affd* 70 NY2d 831; *Matter of Peck v Groholy,* 131 AD2d 146), and that the recorded deeds be examined in order to update the tax assessment rolls *(Matter of Peck v Groholy, supra),* strict technical compliance with each statute in the notification scheme is not constitutionally mandated if there is actual notice, which is the goal of such a scheme. Certainly, the statutes themselves must be designed to achieve actual notice *(Matter of McCann v Scaduto, supra; LVF Realty Co. v Harrington, supra)* and a municipality must endeavor to follow their dictates. However, lack of technical compliance is necessarily fatal to an in rem tax foreclosure proceeding only where the failure was the reason the property owner did not receive the notice to which he or she was entitled.

In the present case, the record reveals that while Yonkers

failed to strictly adhere to the relevant statutory notice requirements (RPTL 1122 [3] [b]; 1124 [2]; 500 [1]), the owner of the property had actual notice of the in rem tax lien foreclosure action. This is apparent from Pompe's affidavit in support of the plaintiffs' motion for summary judgment, in which she stated that Engelmann was the sole shareholder of Westboro, that Westboro was the owner, and that upon Engelmann's death she inherited his stock in Westboro. It therefore is apparent that she was a proper party to receive notice on behalf of the property owner. In that regard, Pompe acknowledged that "[i]n January, 1981, Your Deponent entered into a proposed tax payout agreement with the City of Yonkers * * * subject to the approval of the Yonkers City Council * * * This agreement was also with WESTBORO REALTY CORP". That agreement referred to the in rem tax lien foreclosure action and listed the address of both Pompe and Westboro as 43 Amberson Avenue, Yonkers, New York, the address to which the notice of action had been sent.

The foregoing circumstances, coupled with the absence of a statement from Pompe denying knowledge of the foreclosure action, lead to the conclusion that Westboro received actual notice of the action before its time to answer expired in February 1981. While Yonkers is not to be congratulated for the months of delay before ultimate rejection of the settlement agreement (nor, for that matter, for its earlier, less than diligent search of the records), the plaintiffs themselves must bear the responsibility for failing to protect their own legal interests in the event that the approval of the agreement was not forthcoming.

The crux of the plaintiffs' claim is that since the name "Westboro" did not appear on the notice it is deficient. However, when notice has been sent to the proper address and is received by the real party in interest, the lack of the actual corporate name of the owner of record is not fatal (see, City of Yonkers v Clark & Son, 159 AD2d 535, 537; Matter of City of New York [Norend Realty Corp.], 20 AD2d 925). Thus, in the present case, while the notice named the wrong party, we conclude that it was sent to the correct address and that Pompe, who was the real party in interest, was actually aware of the existence and nature of the pending action in time to defend. Consequently, the constitutionally-required standard of notice was met and the tax deed is valid.

Further, we note that based on the record, it is clear that three years had passed since the 1977 taxes became a lien at the time the foreclosure action was commenced, and, there-

fore, that commencement of the action was not premature *(see,* RPTL 1120 [2]). We have examined the plaintiffs' remaining contention and find it to be without merit (22 NYCRR 202.48; *Seeman v Seeman,* 154 AD2d 584). Mangano, P. J., Kunzeman, Miller and Copertino, JJ., concur.