# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 3
Krystalo Hetelekides, &c.,
  Appellant,
   v.
County of Ontario et al.,
  Respondents.

Mary Jo S. Korona, for appellant.
Jason S. DiPonzio, for respondents.
Pacific Legal Foundation, amicus curiae

RIVERA, J.:

Two fundamental legal principles govern our decision in this appeal. First, a tax

foreclosure proceeding is in rem against the "res"—the taxable real property—and not an

action in personam commenced against an individual to establish personal liability.

- 1 -

Second, New York statutory law and state and federal constitutional guarantees of due process require that the petitioner in a foreclosure proceeding must attempt notice that is reasonably calculated to alert all parties with an interest in the property.

Here, defendants commenced an in rem tax foreclosure proceeding and mailed the statutorily-required notice to the publicly-listed owners of the property, posted and filed the notice, and publicized the notice in the press. Upon learning that a person listed as an owner died before the notices were issued, defendant County Treasurer also personally contacted the sole business located on the property in an effort to identify and personally inform a manager, owner, or any person in charge of the pending foreclosure proceeding. Under these circumstances, defendants provided legally adequate notice of a validly commenced tax foreclosure action. We therefore affirm the Appellate Division's order.

I.

Plaintiff Krystalo Hetelekides, individually as the owner of the property and as executor of the estate of her husband, decedent Demetrios Hetelekides (also known as James Hetelekides), commenced this action against defendants County of Ontario and County Treasurer Gary G. Baxter for damages plaintiff allegedly incurred as a result of the tax foreclosure sale of decedent's property in the Town of Hopewell. At the time of suit, plaintiff had obtained title to the property after a third party purchased the property at public auction and assigned the bid to plaintiff, who paid the entire purchase price. Plaintiff alleged that she was owed the difference between the unpaid tax arrears and the auction purchase price and interest.

According to the record of the bench trial, decedent owned the property and—with plaintiff—operated a restaurant there. Until his death, decedent was responsible for paying the real property taxes. He had not paid the annual tax by the January 1, 2005 deadline when a tax lien was created by operation of law.

Defendants took action pursuant to RPTL article 11 to collect the overdue tax. First, the Treasurer hired a private commercial abstract company to identify the interested parties; the investigator reported that, as of August 31, 2005, and again on May 31, 2006, decedent was the publicly-listed property owner.[1] Thereafter, on November 14, 2005, the Treasurer included the property on a list of delinquent taxes and executed and filed the list with the Clerk of the County in accordance with RPTL 1122.[2] The tax remained unpaid when decedent died on August 1, 2006, a year and a half after the tax became due and almost a year after the filing of the delinquent taxes list.

---

[1] The abstract also listed Geo-Tas, Inc. as an owner of the property, but noted that it did not have title. Our resolution of this appeal does not require us to consider whether the separate notifications to Geo-Tas satisfied due process.

[2] RPTL 1122 (1) provides, in relevant part, that at least "one month after the receipt of the return of unpaid taxes," and at the first opportunity after 10 months from the lien date, "the enforcing officer of each tax district shall execute a list of all parcels of real property[ ] . . . affected by delinquent tax liens held and owned by such tax district." The list of delinquent taxes must describe each parcel, list "[t]he name or names of the owner or owners of each such parcel as appearing on the tax roll," and state the "amount of each tax lien upon such parcel" (RPTL 1122 [6]).

As provided by RPTL 1123, on October 1, 2006—21 months after the lien date—the Treasurer filed an in rem foreclosure petition in Ontario County Court.[3] The same day, the Treasurer's Office sent notices of foreclosure and copies of the petition by certified mail, return receipt requested, and by ordinary first class mail to the property, each addressed separately to "James Hetelekides"; "Hetelekides, James"; and "Geo-Tas, Inc." All told, six separate mailings were sent to the property. The notice listed January 12, 2007, as the final day to redeem the property.[4] On October 2, the Treasurer also posted a copy of the notice and petition in the Ontario County Clerk's Office, published the notice in two local newspapers, and ran additional publications in the newspapers on October 16 and November 1. The certified mailings arrived on October 3, and a long-time employee of the restaurant signed the return receipts, which were then returned to the Treasurer's Office.

During the bench trial, the Treasurer testified that he first became aware of decedent's death and that plaintiff was operating the restaurant in late December 2006 or early January 2007. Thereafter, on three consecutive days during afternoon business hours, the Treasurer personally contacted the restaurant to speak with someone regarding the property. First, on Tuesday, January 9, 2007, the Treasurer called, identified himself, and

---

[3] RPTL 1123 requires an enforcing officer to file a petition of foreclosure, in a specified form, "[t]wenty-one months after [the] lien date, or as soon thereafter as is practicable" (RPTL 1123 [1]; *see* [2]-[4]).

[4] In New York, a taxpayer has a statutory right to "redeem" their property—that is, to pay the delinquent taxes plus any charges in full—before a foreclosure becomes final (*see* RPTL 1110). The concept of redemption developed as an equitable principle in the English courts of chancery (*see generally BFP v Resolution Trust Corporation*, 511 US 531, 541 [1994]; 5 Tiffany Real Property § 1379 [3d ed, Sept. 2022 update])

asked to "speak to the owner, the manager, [or] someone that's in charge of the business." When he was told that no one was available, he said that "[i]t's very imperative or very important that I talk to somebody that owns the business or manages it or has control over it," and asked to be called back. Nobody responded. The Treasurer then called again the following day and asked to "talk to somebody, the owner, somebody who is in charge, a manager, anyone that can -- that has any authority [over the] business, please, I need to talk to somebody." The person who answered the phone said that no one was available, and the Treasurer responded that he had "called yesterday" and "[i]t's very important that I talk to somebody." The Treasurer did not hear back and, the next day at roughly 1:30 p.m., he personally visited the restaurant, identified himself, and repeated to an employee that he needed to speak with a manager or anyone with authority. He was told a third time that no one was available. The Treasurer left his business card, asked for a return call, and reiterated that it was "very important" that he speak with someone. It is undisputed that, at the time of the Treasurer's phone calls and visit, plaintiff worked daily at the restaurant.

By plaintiff's own testimony, the Treasurer's Office and a Town employee gave her conflicting information regarding whether the tax was paid in full. According to plaintiff, after she received her residential tax bill, she went to the Treasurer's Office in either late December 2006 or early January 2007, paid that tax, and asked whether the tax on the restaurant property had been paid. She maintained that a clerk in the Treasurer's Office informed her that the property tax had been paid. However, when she checked with the Town's offices, she was told by an employee that the tax was unpaid. She spoke to the clerk at the Treasurer's Office on two additional occasions and each time was told that the

property tax was paid. The clerk testified that she did not recall those conversations, and that, as a matter of course, an in-person inquiry related to a property would have been noted in the Office's records, but that no such record existed confirming plaintiff's visits.

The tax was still unpaid by the redemption deadline and it is undisputed that the Treasurer declined plaintiff's late offer to redeem. Thereafter, on February 5, 2007, defendants successfully moved for a default judgment in the foreclosure proceeding. Plaintiff, who at that point had retained counsel, did not move to vacate the default and instead unsuccessfully attempted to persuade the County Board of Supervisors to allow her to redeem the property. She also filed a petition in Surrogate's Court, after the default judgment issued, as the named executor to probate decedent's will, under which she was the named heir to the property. Subsequently, in May 2007 an individual purchased the property at public auction and assigned the bid to plaintiff, who then paid the purchase price and received title to the property. The following month, Surrogate's Court issued letters testamentary to plaintiff.

Plaintiff commenced this action in Supreme Court alleging that the in rem foreclosure proceeding was a nullity and that defendants had violated her due process rights; she also asserted additional claims under 42 USC §§ 1983 and 1988, contending that the County had adopted a policy, custom, or practice precluding the Treasurer from providing adequate due process to persons with interests in real property. Following a bench trial, Supreme Court rendered a verdict in plaintiff's favor, except as to the federal statutory claims, concluding that the Treasurer's mailings failed to comply with RPTL

1125 because they were addressed to decedent rather than his estate or plaintiff and that the foreclosure proceeding was a nullity because it was brought against a deceased person.

The Appellate Division modified the judgment, on the law, by vacating those parts that declared the foreclosure proceeding a nullity and granted plaintiff monetary relief, and, as so modified, affirmed (193 AD3d 1414 [4th Dept 2021]). The Court concluded that the evidence presented at the bench trial established compliance with all statutory and due process requirements (*see id.* at 1417). The Court also held that, assuming, arguendo, that defendants were required to take additional steps to ensure that plaintiff received due process, defendants took sufficient steps because the Treasurer made "three personal attempts to talk to someone with authority" and could not have further determined who owned the property because plaintiff had not yet filed a petition in Surrogate's Court (*id.* at 1419). Finally, the Court rejected the Second Department's reasoning in *Matter of Foreclosure of Tax Liens* (165 AD3d 1112 [2d Dept 2018] [*Goldman*], *appeal dismissed & lv denied* 35 NY3d 998 [2020])—which had held that a tax foreclosure proceeding may not be maintained against a deceased person—because the proceeding was in rem against the property and not in personam against decedent personally. Plaintiff appealed as of right on constitutional grounds and alternatively moved for leave to appeal. We denied the motion for leave as unnecessary (37 NY3d 1103 [2021]).

II.

Plaintiff, relying on *Goldman*, first alleges that the in rem foreclosure proceeding was a nullity, and that County Court therefore lacked jurisdiction to enter a default

judgment, because defendants had brought the action against a deceased person. Defendants respond that the in rem foreclosure proceeding was brought against the property, not against the owner, and thus County Court had jurisdiction.

Plaintiff's contention that the foreclosure proceeding was a nullity is based on a misunderstanding of the difference between in rem and in personam jurisdiction, and a conflation of those differences with respect to notice requirements. "Distinctions between actions in rem and those in personam are ancient and originally expressed[,] in procedural terms[,] what seems really to have been a distinction in the substantive law of property under a system quite unlike our own" (*Mullane v Central Hanover Bank & Trust Co.*, 339 US 306, 312 [1950]; *see generally* 2 Joseph Story, Commentaries on Equity Jurisprudence as Administered in England and America § 1007 at 273-274 [1836]; J. Inst. 4.6.1; G. Inst. 4.2-4.3). In New York, the CPLR makes clear that those distinctions continue to exist: "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore" (CPLR 301). In their modern form, those distinctions rest upon the nature of the action and the source of a court's authority to enter judgment (*see generally* Vincent C. Alexander, Prac Commentaries, McKinney's Cons Laws of NY, CPLR C301:1).

"An action *in personam*, giving the persons all the rights and remedies incident to a judgment in such action, is very different from a proceeding by special process *in rem*, either against specified property, or the property at large of the debtor" (*Lowry v Inman*, 46 NY 119, 128 [1871]). "An action or proceeding in rem has for its subject specific property which is within the jurisdiction and control of the court to which application for

relief is made" (*Hanna v Stedman*, 230 NY 326, 335 [1921]). "The foundation of [in rem] jurisdiction is physical power" (*McDonald v Mabee*, 243 US 90, 91 [1917]), and in an action in rem, a court obtains jurisdiction over the "res"—the property at issue in the proceeding (*see Hanson v Denckla*, 357 US 235, 246 [1958] ["The basis of jurisdiction is the presence of the subject property within the territorial jurisdiction of the forum (s)tate"]; *see generally* David D. Siegel & Patrick M. Connors, New York Practice § 101 [6th ed, Dec. 2022 update]). Thus, "[an] action [in rem] proceeds against such specific property and its object is to have the court define the rights therein of various and conflicting claimants" (*Hanna*, 230 NY at 335; *see e.g. Freeman v Alderson*, 119 US 185, 187 [1886] ["Actions *in rem*, strictly considered, are proceedings against property alone treated as responsible for the claims asserted by the libelants or plaintiffs. The property itself is in such actions the defendant . . ."]; Black's Law Dictionary [11th ed 2019], action in rem). "The result of such an action is a judgment which operates upon the property and which has no element of personal claim or personal liability" (*Hanna*, 230 NY at 335; *see Hanson*, 357 US at 246 n 12 ["A judgment in rem affects the interests of all persons in designated property"]).

In contrast, an action in personam is initiated against a person to determine their personal rights and obligations (*see e.g. Lowry*, 46 NY at 128; Black's Law Dictionary [11th ed 2019], action in personam). Thus, "[a] judgment in personam imposes a personal liability or obligation on one person in favor of another" (*Hanson*, 357 US at 246 n 12). In such an action, "a state court base[s] its jurisdiction upon its authority over the defendant's person" (*Mennonite Bd. of Missions v Adams*, 462 US 791, 796 n 3 [1983]).

This Court has long recognized that "an action for foreclosure 'is in the nature of a proceeding in rem to appropriate the land' " (*Jo Ann Homes at Bellmore v Dworetz*, 25 NY2d 112, 122 [1969], quoting *Reichert v Stilwell*, 172 NY 83, 89 [1902]; *see Dudley v Congregation of Third Order of St. Francis*, 138 NY 451, 458 [1893]; *see generally* 59A CJS, Mortgages § 873). Indeed, this Court has clearly described tax foreclosure proceedings as being governed by a "detailed . . . in rem foreclosure procedure" set forth in RPTL article 11 (*Sonmax, Inc. v City of New York*, 43 NY2d 253, 256 [1977]).[5] The legislative history of article 11—originally enacted as article 7-a of the Tax Law by chapter 692 of the Laws of 1939—confirms that tax foreclosure proceedings involve "proceed[ing] *directly against the land*" instead of the owner of the taxable real property (Mem of George Xanthaky, Councilmember, City of Long Beach, Bill Jacket, L 1939, ch 692 at 12, 14 [emphasis added]; *see* Arnold Frye, The Tax Foreclosure Procedure Problem—a Solution, Bill Jacket, L 1939, ch 692 at 22-27).

Nevertheless, plaintiff, relying on *Goldman*'s reasoning, contends that decisions of the United States Supreme Court and this Court have eroded the distinction between actions in rem and in personam. That argument is meritless as it proceeds from a misunderstanding of fundamental legal principles regarding jurisdiction and notice. First, the assumption that a civil action or proceeding must be brought against a person is ahistorical and contrary to

---

[5] Alternatively, the legislature has approved of an in personam method allowing a tax collector to "impose personal liability for . . . unpaid taxes" (*City of Buffalo v Cargill, Inc.*, 44 NY2d 7, 11 [1978]; *see* RPTL 926; *Kennedy v Mossafa*, 100 NY2d 1, 7 n 1 [2003]; *Goldman*, 165 AD3d at 1125-1126 [Scheinkman, P.J., dissenting]; *see also Matter of Ueck*, 286 NY 1, 7 [1941]).

established law. Both this Court and the Supreme Court have continued to recognize the "usefulness of distinctions between actions in rem and those in personam in many branches of law" (*Mullane*, 339 US at 312; *see Matter of McCann v Scaduto*, 71 NY2d 164, 173 [1987]; *see also e.g. United States v Bajakajian*, 524 US 321, 329-334 [1998] [asset forfeiture proceedings]; *Thyssen, Inc. v Calypso Shipping Corp.*, 310 F3d 102, 106-107 [2d Cir 2002] [admiralty proceedings]; *Geary v Geary*, 272 NY 390, 399 [1936] [matrimonial actions]). Indeed, CPLR 301 provides that a court may maintain jurisdiction over property as had been done under the common law, including through an action in rem (*see* Alexander, Prac Commentaries, CPLR C301:1). The legislature did not abrogate this common understanding of foreclosure law and in rem jurisdiction when it enacted RPTL article 11 (*see Arbegast v Board of Educ. of S. New Berlin Cent. School*, 65 NY2d 161, 169 [1985]; *see also* NY Const, art I, § 14; *Matter of Carnegie Trust Co.*, 206 NY 390, 397-398 [1912]). Of course, a dead person cannot be sued but, as long understood, an action in rem, like the tax foreclosure proceeding here, is not an action against a person, but rather the subject property on which the tax was charged and due. Put another way, the County did not sue the owner of the property; it merely took steps to notify the owner and others with a potential interest in the property so that they could protect their interests if they so chose.

Second, plaintiff and *Goldman*'s reliance on due process and notice by publication case law is misplaced. Before *Mullane*, "notice by publication was good enough" to satisfy due process in proceedings in rem (*Matter of McCann*, 71 NY2d at 173, citing *Longyear v*

*Toolan*, 209 US 414 [1908], *Ballard v Hunter*, 204 US 241 [1907], and *Leigh v Green*, 193 US 79 [1904]).

> "Several justifications were commonly advanced for the sufficiency of constructive notice in in rem proceedings. First, nonresident landowners—who themselves could not be served—often had local caretakers to watch over their land and advise them of published notices affecting their property. Second, all landowners were charged with a duty to keep informed about the status of their land and presumed to know the consequences of nonpayment of taxes. Third, in in rem proceedings, only 'the land itself' was in issue; affected individuals did not have to be present. Finally, costly notice requirements impeded the State's vital interest in collecting its revenues quickly and inexpensively, making constructive notice a reasonable balance of the competing interests" (*id.* [citations omitted]; *see e.g. Picquet v Swan*, 19 F Cas 609, 612-615 [D Mass 1828, No. 11,134, Story, C.J.]).

*Mullane* and subsequent case law, however, recognized that "[s]ervice by publication amounts only to a gesture[,] and 'when notice is a person's due, process which is a mere gesture is not due process' " (New York Practice § 107, quoting *Mullane*, 339 US at 315; *see e.g. Mennonite Bd.*, 462 US at 796 n 3 [1983]; *Matter of McCann*, 71 NY2d at 173-176). That case law "marked a departure from the early justifications underlying the conclusion that published notice was due notice, and a recognition that the 'caretaker' theory, the presumption that every landowner read every newspaper of general circulation, and the notion that only 'the land itself' was affected, had become increasingly unrealistic" (*Matter of McCann*, 71 NY2d at 174). Contrary to *Goldman*'s conclusion that "the United States Supreme Court has explicitly rejected the fiction that an in rem proceeding is not asserted against any individuals, but only against the property itself" (165 AD3d at 1120, citing *Shaffer v Heitner*, 433 US 186, 216 [1977]), the Court has merely recognized that

property owners and interested parties are owed adequate process where their property rights are at stake through an in rem foreclosure proceeding. Put another way, case law relating to notice and due process set forth "requirements of *service* imposed in the modern era to address concerns of due process. These are not matters which go to the jurisdiction of the court to entertain the action on its merits" (*Goldman*, 165 AD3d at 1127 [Scheinkman, P.J., dissenting]).

In sum, we reject plaintiff's claim that the tax foreclosure proceeding is a nullity. *Goldman* rests on an erroneous legal premise and should not be followed.[6]

III.

Plaintiff's alternative claim that defendants failed to provide her with adequate notice is similarly without merit. Defendants satisfied both their statutory and constitutional notice obligations.

A.

Former and current RPTL 1125 (1) require that notice of a tax foreclosure proceeding be provided to "each owner and persons whose right, title, or interest was a matter of public record *as of the date the list of delinquent taxes was filed*, which right, title or interest will be affected by the termination of the redemption period, and whose name

---

[6] *Matter of City of Schenectady (Permaul)* (201 AD3d 1 [3d Dept 2021], *appeal dismissed & lv denied* 38 NY3d 994 [2022]) is also abrogated to the extent that it relied upon *Goldman*.

and address are reasonably ascertainable from the public record" (emphasis added). The "public record" includes "the records in the offices of the surrogate of the county" (*id*.). RPTL 1125 former (1) provided for notice to owners by certified mail and to interested persons by first class mail, whereas the current RPTL 1125 (1) (b) (i), as amended effective November 23, 2006 (*see* L 2006, ch 415, § 2), requires both types of mailings for all notices. Moreover, RPTL 1125 (1) (b) (i) provides that "notice shall be deemed received unless both the certified mailing and the ordinary first class mailing are returned . . . within forty-five days after being mailed."

Here, it is undisputed that on the date the list of delinquent taxes was filed, plaintiff was not a publicly-listed owner or person with an interest in the property. Indeed, plaintiff did not file a petition in Surrogate's Court until after the redemption deadline and letters testamentary were issued to plaintiff as the named executor over seven months after the notices had been served and well after the court entered a default judgment for lack of appearance of an interested party. When defendants performed the required search of public records, decedent was alive and listed as an owner under the name "James Hetelekides." The notices were sent by certified mail and first class mail to him at the property address, the mailings were not returned, and the return receipts were signed for by a restaurant employee. Thus, the notice was sent in compliance with the statutory requirements.

B.

Plaintiff contends that defendants' compliance with the statute is insufficient because defendants failed to provide notice consistent with the requirements of due process. We disagree. Here, defendants complied with the statutory notice requirements, including publication (*see* RPTL 1124), and, upon learning of decedent's death, determined that they would take additional steps to provide notice to potential interested parties. We therefore reject plaintiff's argument that defendants' actions, under the totality of the circumstances, were constitutionally deficient.

The standard for determining whether notice is adequate under the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and article I, § 6 of the New York Constitution is well settled:

> "Due process is a flexible concept, requiring a case-by-case analysis that measures the reasonableness of a municipality's actions in seeking to provide adequate notice. A balance must be struck between the State's interest in collecting delinquent property taxes and those of the property owner in receiving notice (*see Kennedy*, 110 NY2d at 9; *see also Matter of Zaccaro v Cahill*, 100 NY2d 884, 890 [2003]). In striking such a balance, the courts may take 'into account the status and conduct of the owner in determining whether notice was reasonable' (*Kennedy*, 100 NY2d at 11, citing *Matter of ISCA Enters. v City of New York*, 77 NY2d 688, 700 [1991])" (*Matter of Harner v County of Tioga*, 5 NY3d 136, 140 [2005]).

"The means employed [to effect service] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it" (*Mullane*, 339 US at 315). In other words, actual notice is not required, but any attempted notice must be reasonably calculated to provide the recipient with the intended advisement under the particular

circumstances of the case, taking into account the recipient's conduct and the demands that may be fairly imposed on a municipality to effectuate service given the government's interests (*see e.g. Jones v Flowers*, 547 US 220, 230 [2006]; *Covey v Town of Somers*, 351 US 141, 145-146 [1956]; *see also e.g. Robinson v Hanrahan*, 409 US 38, 39-40 [1972]).

As discussed, a municipality is required to notify "each owner and persons whose right, title, or interest [would] be affected by the termination of the redemption period" (RPTL 1125 [1]). However, once defendants learned of decedent's death, due process mandated that they consider whether that "unique information" about decedent, obtained after the notices were sent, required additional efforts "regardless of whether [the] statutory scheme is reasonably calculated to provide notice in the ordinary case" (*Jones*, 547 US at 230). Otherwise, a municipality could rely on notification efforts that it knows have failed and without determining whether due process requires additional efforts to identify and inform those persons with interests in the property (*see Covey*, 351 US at 145-146).

We conclude that defendants' efforts were sufficient. Defendants publicized the notice and petition in two local newspapers—including the same newspaper where decedent's obituary was published—on three different days. Defendants also mailed six copies of the notice to the property, four of which were addressed to "James Hetelekides." Once defendants learned that decedent had died, the Treasurer decided to make additional efforts to notify living interested parties before the time to redeem had expired, visiting the business located on the property three days in a row during midweek, regular business hours. On the first two days, the Treasurer called the restaurant—the sole business situated on the property and the business decedent and plaintiff ran together when decedent was

alive—identified himself, and made clear that "[i]t's very imperative or very important that [he] talk to somebody that owns the business or manages it or has control over it." When no one returned his calls, he visited the restaurant in person on the third day during regular business hours, identified himself, and asked to speak with the manager or owner about an important matter. When he was again told that no one was available, he left his business card and reiterated that it was "very important" that the owner or a person in control of the restaurant contact him. It is undisputed that throughout this period plaintiff worked at the restaurant seven days a week and that she handled its mail. Under these circumstances, the publications and the Treasurer's personal efforts were reasonably calculated to ascertain and notify any persons who might have had a legal interest in the property that might have been affected by the pending foreclosure action and redemption period.

Plaintiff's "status and conduct" is also relevant to our analysis (*Kennedy*, 100 NY2d at 11). First, even though defendants did not know that plaintiff was the executor of decedent's estate and his heir, they could make the reasonable assumption that the executor—whoever that might be—would seek to apprise themself of any issue with the property and preserve any heirs' interests. As the Second Circuit has recognized, "if the mail contains a notice that the government is taking some action against property of the decedent, it is reasonable to assume that the administrator will take steps to preserve the property," and thus a taxing authority "[is] entitled to expect that those appointed to administer estates that include real property would place something on the land record to put the world on notice of the owner's death and would also obtain mail addressed to their decedent" (*Bender v City of Rochester*, 765 F2d 7, 12 [2d Cir 1985]). Moreover, by calling

and visiting the restaurant in person during its hours of operation, the Treasurer went to a presumably readily available source for information about persons with an interest in the property at a time when a manager or the owner would likely be present.

Second, plaintiff, who was represented by counsel before defendants sought a default judgment, failed to avail herself of recourse under RPTL article 11. Plaintiff was aware before the last day to redeem that there was a potential outstanding tax on the property, given the conflicting information from the County Treasurer and Town office employees, and yet she did not take actions to ensure that the Treasurer was aware of her status, nor did she attempt to pay the tax to avoid foreclosure. Section 1126 (1) provides that "[a]ny mortgagee, lienor, lessee or other person having a legally protected interest in real property who wishes to receive copies of the notices required by this article may file with the enforcing officer a declaration of interest," which "shall include the name and mailing address of the person submitting such declaration, a description of the parcel or parcels in which such person claims an interest, and a description of the nature of such interest." Even though decedent's will named plaintiff as executor of his estate and inheritor of the property, plaintiff did not file such a declaration. Nor did she seek to vacate the default judgment, even though RPTL 1131 provides up to one month after entry of judgment to reopen a default. Instead, she sought extra-statutory relief from the County by requesting to pay the taxes after the redemption deadline.

C.

Plaintiff argues that the Treasurer could have done more to attempt to effect service on her, in particular, by posting the notice and petition on the restaurant's door or another public-facing location, mailing additional copies to plaintiff, or leaving copies during his personal visit to the restaurant. None of those specific actions were required as a matter of due process. Due process requires only that attempts to provide notice be reasonably calculated to inform an interested party of pending action against the property *(see Mennonite Bd. of Missions*, 462 US at 795, quoting *Mullane*, 339 US at 314; *Matter of McCann*, 71 NY2d at 173-176). "The key word is 'reasonably,' which balances the interests of the State against the rights of the parties" (*Kennedy*, 110 NY2d at 9). Posting the notice and petition on the door or hand-delivering additional copies to the restaurant would have provided no greater certainty of notice since the certified and first class mailings were not returned and an employee signed for them (*see Jones*, 547 US at 235; *Mullane*, 339 US at 314; *Mac Naughton v Warren County*, 20 NY3d 252, 257 [2012]; *see also* RPTL 1125 [1] [b] [i]). Likewise, mailing additional copies to plaintiff would not have been reasonably calculated to provide service to a known interested party in the circumstances presented here. Defendants did not know whether plaintiff was a person with an ownership interest in the property since she did not probate the will until after the default judgment was issued. Finally, when the Treasurer visited the restaurant to ascertain the identity of the property's new owner, he identified himself and made clear to plaintiff's employees that the matter was important. Despite the Treasurer's efforts, plaintiff did not immediately return his calls.

We reject plaintiff's additional argument that a taxing authority should seek appointment of an administrator where the taxpayer is deceased, as that would impose an undue burden on municipalities; extend the time of proceedings, where the taxes have usually been outstanding for at least two years; and disincentivize executors or other interested parties from timely disposing of the estate and preserving the property. Here, defendants struck an appropriate balance between the government's interest in collecting the delinquent tax and the interests of persons connected to the property in receiving notice when it publicized and mailed the notice and contacted the restaurant several times.

In sum, under the circumstances presented here, defendants made an adequate attempt at service, satisfying due process requirements.

IV.

Plaintiff's federal statutory claims under sections 1983 and 1988 were properly dismissed. To establish a policy or custom, plaintiff was required to show "an official policy or custom of the [County] government itself [that] caused the [Treasurer or his employees] to violate her constitutional rights" (*De Lourdes Torres v Jones*, 26 NY3d 742, 768 [2016]). "Under *Monell v New York City Dept. of Social Servs.* (436 US 658 [1978]) and its progeny, 'official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law' " (*id.* [alterations omitted], quoting *Connick v Thompson*, 563 US 51, 61 [2011]).

As Supreme Court held, even assuming that plaintiff made out a case that defendants denied her due process, the record fails to establish an official policy or custom that caused a violation of her constitutional rights. Plaintiff did not provide evidence that defendants routinely failed to notify estate administrators or parties who informed defendants of their interests or an owner's death. Indeed, as discussed, once defendants learned of decedent's death, the Treasurer took steps to identify and provide notice to parties with a legal interest in the property that would be affected by the foreclosure and redemption deadline by personally contacting the restaurant to identify an owner or manager. Thus, plaintiff failed to carry her burden since nothing in the record establishes an official policy or a widespread custom violative of due process.

## V.

A tax foreclosure proceeding is an action against the real property. In such a proceeding, the taxing authority has a statutory and constitutional obligation to attempt to provide adequate notice to owners and persons with an interest in the property who may be affected by a foreclosure action or the redemption deadline. If the authority learns of the death of an owner, the authority must determine whether, in the unique circumstances of each case, due process requires additional reasonable efforts to identify interested parties and, if so, attempt to provide those interested parties with notice of the pending foreclosure. Courts should assess those efforts based on the totality of the authority's actions and the status and conduct of the potential interested party. Defendants' efforts here were sufficient.

Accordingly, the order of the Appellate Division should be affirmed, with costs.


Order affirmed, with costs. Opinion by Judge Rivera. Acting Chief Judge Cannataro and Judges Garcia, Wilson, Singas and Troutman concur.

Decided February 14, 2023